**Jim James MOST, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 37649.**

Court of Criminal Appeals of Texas.

Feb. 10, 1965.

**538** 

Don M. Wilson, Charles B. Rose, Dallas, for appellant.

Henry Wade, Dist. Atty., Jim Miller, Neil English and W. John Allison, Jr., Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for rape by threats; the punishment, 99 years.

On Friday night, September 6, while the husband of the prosecutrix was at work away from their trailer home, and their daughter, age two, was asleep in her room, the prosecutrix, after locking the doors and retiring was awakened about 1 A.M. by the sound of footsteps in her bedroom. Although she could not see the man's face because the room was dark, she could see the shape of a man about the size of her husband standing at the foot of the bed, and asked, "Is that you, Doug (husband)?" After the man replied "Yes" she believed he was her husband. When she smelled the odor of perspiration and alcohol as the man placed his knee on the bed, she knew he was not her husband, and immediately ordered him to leave. Then, "He told me to hush up that he had a buddy with a gun on my baby." This frightened her and she lay still. He ordered her to take her pants off and when she didn't he reminded her that his buddy had a gun on her baby, but she lay there because she was too scared. After he repeated the statement about the gun and her daughter four times, she removed her pants. Then he ordered her to guide his private parts into hers, and when she did not do so he repeated his order two or three times and reminded her of his buddy who had a gun on her baby, and she placed his private parts into her female parts. The prosecutrix testified that at this time she was under the fear of threats toward her baby and also in fear of bodily injury to herself and her child, and that the act of intercourse was without her consent. When he had completed the act of intercourse, he told her to lie there about ten minutes and that his buddy would be in there with her baby. After the prosecutrix heard her assailant leave the trailer, she went to her daughter, whom she found to be all right. Being unable to reach her husband by telephone, she called neighbors who notified the police. The officers took her to a hospital where she was examined by a physician, who found male spermatozoa present in her genital organs.

About 3 A.M., Tuesday, September 11, two men who were neighbors of the prosecutrix saw a man trying to open the front door of her home. As they approached, the man turned and when he was told by one of the witnesses to "freeze", the other witness testified that, "He said he didn't have anything to do with the attack, that he was only chasing some boys away from the trailer." In a short time the officers arrived. They found a .22 calibre pistol

in the waistband of appellant's trousers and took him into custody.

The written statement of the appellant made to Officer Boyd, which appellant signed, was shown to have been voluntarily made, and complies with the provisions of Art. 726, C.C.P. After a hearing on the voluntary nature of the written statement, outside the presence of the jury, it was admitted in evidence. The statement reads in part, as follows:

"Last Friday evening September 6, 1963, * * * When I got to the front door of this trailer Friday night I turned the knob and the door came open a little ways and a chain was holding the door from the inside. I pulled the door out from the bottom and squeezed through and got inside the trailer. I walked back to the bedroom and the woman raised up and said, 'Is that you, honey?' I said, 'Yes', and she layed back down. Then she spoke up and said, 'You're not my husband.' I told her just to lay still and take off your pants. I got in bed with the woman and unzipped my pants and —— her. When I got through I got up off the bed and went back to the front door. I had to unfasten a chain at the top of the door to get the door all the way open. I then left the trailer and went home."

On cross-examination, a sister of the appellant testified that after midnight, September 6, she and her boy friend let the appellant, at his request, out of their car at a trailer court, and that he later came on home and told her he had raped a woman at the trailer court.

The appellant did not testify but called two witnesses who testified that he was at home during the time the offense of rape is alleged to have occurred.

Appellant contends that the evidence is insufficient to support a conviction on the ground that it shows only threats against a third person, the child of the prosecutrix,

and that no threats were made against the prosecutrix.

The indictment alleged that the offense of rape was committed by the use of force, threats and fraud.

The court submitted the case to the jury solely as one of rape by threats.

The offense of rape was defined in the court's charge as the carnal knowledge of a woman without her consent and obtained by threats. Art. 1183, Vernon's Ann.P.C.

In rape by threat, the threat as required by statute "must be such as might reasonably create a just fear of death or great bodily harm, in view of the relative condition of the parties as to health, strength and other circumstances of the case." Art. 1185, Vernon's Ann.P.C.

From the statute it appears that rape by threats depends upon the seriousness of the threats.

The statute does not specify how, by or through what means the threats in a rape case must be made—that is, whether by some oral statement, written statement, or acts done. All the statute does in defining the term "threat" is to specify the effect and not the method or manner employed in making such threats.

■ It appears that the test for such cases is that whatever is said or done must be such as would operate upon the mind of the injured female to cause her to yield to the defendant and must be sufficient to create a fear of death or serious bodily injury.

■ The acts and statements of the appellant, as shown by the evidence, are sufficient to warrant the jury's finding that the appellant was guilty of rape by threats.

The prosecutrix was asked and answered as follows:

"Q: I will ask you, please ma'm, at the time this man's male organ penetrated your female organ if

you were under fear of threats not only towards your baby but also in fear of bodily injury for yourself and your child?"

"A: Yes."

The appellant moved to strike on the grounds that it was irrelevant and immaterial, and a conclusion of the witness. There appears no error in the refusal to strike.

The judgment is affirmed.

Opinion approved by the Court.