**Dewitt T. BLOUNT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 51788.**

Court of Criminal Appeals of Texas.

Oct. 20, 1976.

James H. Kreimeyer, Belton, for appellant.

Joe Carroll, Dist. Atty., and Bob D. Odom, Asst. Dist. Atty., Belton, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for aggravated rape. Punishment was assessed at twenty-five years.

■ The sole ground of error challenges the sufficiency of the evidence to show that the rape was aggravated, V.T.C.A. Penal Code Sec. 21.03. Appellant makes no contention that the evidence would have been insufficient to support a conviction for rape, V.T.C.A. Penal Code Sec. 21.02, but con-

tends only that there was no evidence that he "compel[led] submission to the rape by threat of death, serious bodily injury, or kidnapping to be imminently inflicted on anyone," V.T.C.A. Penal Code Sec. 21.-03(a)(2), as alleged in the indictment and as included in the trial court's charge.[1]

The record reflects that on the afternoon of November 13, 1974, two unarmed men, including appellant, forced their way into the house trailer of the prosecutrix, who was alone at the time.

The prosecutrix was a deaf-mute. With the aid of an interpreter skilled in sign language, she testified that the men dragged her along the floor through the bathroom and into the bedroom. She suffered a bruise on one arm as a result.

Appellant then undressed her while his partner held her down on a bed by her neck and shoulder with a pillow on her head. Both men engaged in sexual intercourse with her and then departed.

The only testimony of the prosecutrix as to her state of mind during these events was that she was "shocked" and "couldn't think."

The only evidence as to force or threats other than that recited is the following:

"Q. [by the prosecutor]: At the time while this was happening did one of them get a knife that belonged to your husband?

"A. [by the prosecutrix, with the aid of an interpreter]: She said yes.

"Q. Did he threaten you with it?

"A. No. She said no.

"Q. What did he do with it?

"A. The way I understand it the man said almost and she said no.

"Q. Did one of them tell you that if you told they would come back and kill you?

"A. Yes."

---

1. We note that the charge also authorized the jury to find appellant guilty if it found that he had caused serious bodily injury to the prosecutrix, see V.T.C.A. Penal Code Sec. 21.-03(a)(1). This aggravating factor was neither alleged in the indictment nor, as conceded by all, supported by a scintilla of evidence at trial. The inclusion of this portion of the charge was error. See *Dowden v. State*, 537 S.W.2d 5 (1976).

Thus, the only threatened death was conditional and at some indefinite time in the future. This threat was insufficient to satisfy the requirement of the statute that the threat be imminent. As stated in the practice commentary to Sec. 21.03:

"Note that the threatened harm of Subsection (a)(1) [sic [2]] must be 'imminent;' hence a threat to harm someone at an indeterminate time in the future does not aggravate."

See also *Zamora v. State*, Tex.Cr.App., 449 S.W.2d 43; *Diggles v. State*, 99 Tex.Cr.R. 288, 269 S.W. 88.

Hence, the conviction can stand only if there was sufficient proof of a threat of imminent infliction of serious bodily injury, which is defined in V.T.C.A. Penal Code Sec. 1.07(a)(34) as follows:

" 'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

A threat can be communicated by action or conduct as well as words. *Most v. State*, Tex.Cr.App., 386 S.W.2d 537; *May v. State*, 172 Tex.Cr.R. 490, 358 S.W.2d 379. In the instant case, however, there was no evidence of any threat by any means that rose to the level of the quoted statutory definition. No weapons were used; the prosecutrix was not mistreated to the extent that serious bodily injury might have resulted, and no verbal or written threats of such nature were communicated.

It is necessary, therefore, that the judgment be reversed. See *Zamora v. State*, supra; *May v. State*, supra; cf. *Banks v. State*, 530 S.W.2d 940; *Twomey v. State*, 520 S.W.2d 784; *Lewis v. State*, 503 S.W.2d 806; *DeVonish v. State*, 500 S.W.2d 800; *Broadway v. State*, 418 S.W.2d 679; *Most v. State*, supra.

We iterate that the evidence would have been sufficient to support a conviction for rape under Sec. 21.02, which apparently is what the dissent also finds. The dissent, however, does not contest our finding that what threats were made were not imminent threats of death or of serious bodily injury. The dissent filed makes no assertion not made by this majority nor does it find any fact proven that we have held not proven. It is a dissent without reason that would abolish the distinction between rape (Sec. 21.02) and aggravated rape (Sec. 21.03), and ignore the legislative mandate that two distinct offenses be defined in those provisions. The lesser included offense which this record shows appellant to have committed was not even submitted to the jury. Yet the dissent, on proof of guilt for simple rape, would hold appellant guilty of a different and more serious offense for which there was insufficient evidence.

The judgment is reversed and the cause remanded.

---

ONION, Presiding Judge (concurring).

The dissenting opinion asserts that the appellant and his companion exhibited a knife during the incident. Since this is at odds with the majority opinion, I have carefully examined the record, page by page, line by line, and I find no place where the evidence reflects any knife was exhibited to the prosecutrix thereby causing her to submit. The only testimony as to a knife is that quoted in full in the majority opinion. The prosecutrix testified that one of the men got a knife that belonged to her husband, but she expressly testified that "he" did not threaten her with the knife. The members of this court may disagree as to the law, but we should never disagree on what facts are reflected in the appellate record before us.

In reviewing the sufficiency of the evidence to sustain a conviction, we must view the same in the light most favorable to the jury's verdict.

The appellant was not simply charged with rape, but was charged with aggravated rape under the second mode of V.T.

---

**2.** The proper subsection is (a)(2).

C.A., Penal Code, Sec. 21.03.[1] Omitting the formal parts, the indictment charged that on or about November 13, 1974, the appellant "did then and there knowingly and intentionally by force and threats have sexual intercourse with E___ B___, a female not his wife without her consent, and did intentionally and knowingly compel the said E___ B___ to submit to such act of sexual intercourse by threatening the imminent infliction of death or serious bodily injury to the said E___ B___."

The court's charge to the jury submitted aggravated rape in the second mode as alleged in the indictment, defining "serious bodily injury" as meaning "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." See V.T.C.A., Penal Code, Section 1.07(a)(34).

The jury found the appellant "guilty as charged in the indictment."

Turning to the sufficiency of the evidence to sustain the verdict, it is observed that the difficulty with the case is that the crucial testimony came from the prosecutrix, who is a deaf mute, whose testimony was received through the use of an interpreter. In view of the record, it is clear that the interpreter, in the manner of repeating the witness' answers, etc., was not an experienced courtroom interpreter for deaf mutes. Perhaps because of this or for other reasons the prosecutors did not press for clarification when the answers as to crucial questions were unclear. In jury argument one prosecutor stated it was the first time he had been through the process of receiving testimony from a person with the prosecutrix's physical handicap and said, "I know it is not an easy thing for you to understand exactly what was said because I had trouble

myself." One of the defense counsel stated in his jury argument that the interpreter had his back to him and he couldn't hear all the answers of the prosecutrix. We, of course, must be guided by the record before us, approved without objections.

The essential facts are stated in the majority opinion and need not be repeated here. It must be determined, of course, if the requirements of the second mode of aggravated rape as provided by V.T.C.A., Penal Code, Section 21.03, were shown. See footnote # 1. First it is observed that submission by threat of kidnapping was neither alleged nor proved, so it need not be considered. The indictment alleged that the rape became aggravated by threat of death or serious bodily injury to be imminently inflicted on the prosecutrix. Does the evidence show such a threat? I think not.

First it is observed that the record reflects that on direct examination of the prosecutrix the following occurred:

"Q. Did one of them tell you that if you told they would come back and kill you?

"A. Yes."

Just when this threat was made in the course of events is not established by the record. Further, it is not shown how it was communicated to the prosecutrix. The record reflects that soon after the entry into the mobile home the appellant and his companion learned that the prosecutrix could not communicate except by writing, and a number of notes were exchanged and later introduced into evidence. Among them was no threat to return and kill her if she told what occurred. Thus, just how this threat was communicated to her is left unclear from the record before us. Was this a threat of death to be imminently inflicted on the prosecutrix as alleged so as to com-

---

1. V.T.C.A., Penal Code, Section 21.03 (Aggravated Rape) provides:

"(a) A person commits an offense if he commits rape as defined in Section 21.02 of this code or rape of a child as defined in Section 21.09 of this code and he:

"(1) causes serious bodily injury or attempts to cause death to the victim or anoth-

er in the course of the same criminal episode; or

"(2) compels submission to the rape by threat of death, serious bodily injury, or kidnapping to be imminently inflicted on anyone.

"(b) An offense under this section is a felony of the first degree."

pel submission to rape? In the "Explanatory Comment" to V.T.C.A., Penal Code, Section 21.03, found in 2 Branch's Anno. Penal Statute, 3rd ed., p. 95, it is stated: "That the threatened harm must be 'imminent' is new to the existing statutory definition of threats; hence a threat to do harm at an indeterminate future will not suffice for the offense of aggravated rape. Also new is the incorporation of the threat of kidnapping along with threats of death or serious bodily injury." Also as observed in the majority opinion the Practice Commentary to said Section 21.03 notes that the threatened harm must be "imminent" and that a threat to harm someone at an indeterminate time in the future does not aggravate.

Therefore, we must eliminate the fact that appellant and his companion may have told the prosecutrix, by whatever means, that they would come back and kill her as that type of threat is not sufficient under the statute as drafted by the Legislature to justify aggravated rape.

Looking to the evidence as to the knife erroneously relied upon by the dissent, we note, as we did earlier, the prosecutrix's testimony that though one of the men got or discovered her husband's knife "he" did not threaten her with it. Such evidence is not sufficient to sustain a conviction under the second mode of V.T.C.A., Penal Code, Section 21.03.[2]

It is also observed that there was evidence that appellant's companion placed a pillow over the prosecutrix's head prior to the rape and she tried to get it off. Just in what manner the pillow was applied was not described nor how long it was held on her head, or whether it prevented her from breathing, etc., was not shown. While a threat can be communicated by action or conduct, as well as verbally, *Most v. State*, 386 S.W.2d 537 (Tex.Cr.App.1965), the evidence here as the use of the pillow was not sufficiently developed to satisfy the re-

quirements of V.T.C.A., Penal Code, Section 21.03, under which appellant was charged and convicted.

Considering the evidence in the light most favorable to the jury's verdict, I must conclude that the majority opinion is correct and that the dissenting opinion is not quite accurate as to what this record reflects.

I concur for the reasons stated.

DOUGLAS, Judge (dissenting).

The majority reverses this conviction on the grounds that no proof of a threat was made. The prosecutrix was deaf. Appellant and another entered her trailer house and both of them raped her. Appellant made her commit oral sodomy upon him. During the incident the rapists exhibited a knife. She testified as follows:

"Q. [by the prosecutor]: At the time while this was happening did one of them get a knife that belonged to your husband?

"A. [by the prosecutrix, with the aid of an interpreter]: She said yes.

"Q. Did he threaten you with it?

"A. No. She said no.

"Q. What did he do with it?

"A. The way I understand it the man said almost and she said no.

"Q. Did one of them tell you that if you told they would come back and kill you?

"A. Yes."

For a woman who could not hear, this is sufficient proof of a threat. It is the belief of the writer that the exhibition of a knife while "this was happening" is a threat. Does the majority require that a written communication be shown to a deaf woman to constitute a threat under the statute?

The judgment should be affirmed.

GUPTON, J., joins in this dissent.

---

2. It is observed that in jury argument one prosecutor stated in opening argument: "At one point he put his hand over on a knife on the dresser." In closing argument another prosecutor argued: ". . . and a man putting his hand on a knife and a man saying I will kill you if you tell anybody . . . ." These arguments were made without objection, but there is no evidence in the record to support such arguments. The prosecutors may have known this, but they did not prove this.