**James Warren BRIGHT, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 57455.

Court of Criminal Appeals of Texas, Panel No. 2.

June 27, 1979.

Rehearing En Banc Denied Sept. 19, 1979.

Mark C. Hall, on appeal only, Lubbock, for appellant.

Alton R. Griffin, Dist. Atty. and J. David Nelson, Asst. Dist. Atty., Lubbock, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for aggravated rape. The punishment is imprisonment for ninety-nine years.

Appellant contends that the evidence is insufficient to prove aggravated rape; evidence of a prior conviction offered at the punishment phase was improperly admitted because it was not proved beyond a reasonable doubt; the trial court erred by including a definition of "criminal episode" in the charge; the prosecutor engaged in improper jury argument; and the trial court erroneously denied appellant, who represented himself prior to the trial on the merits, an annotated copy of the Code of Criminal Procedure.

On September 26, 1975, the complaining witness was preparing to leave her house for the airport when appellant appeared at her door and asked to use the telephone. She admitted the appellant, showed him the telephone, and continued to pack. She described the subsequent events as follows:

"Q. Okay. What happened then?

"A. I—I—I just was walking into the bedroom and—and he appeared behind me and said, 'I need some money.'

"Q. Were you startled at this point?

"A. I was terrified.

"Q. What did you do?

"A. I said, 'All right—oh—okay, I will get you some money. You go on outside,' and I backed off and he said, 'Where is your money?' And I said, 'That's okay, I'll get you some money, just go outside and I'll bring you some money.'

"Q. Okay. What did you do at that point?

"A. And he said, 'Well, no, I'm not going anywhere. I'm going to get your money,' and I said, 'Okay, okay. I'll —I'll—I'll get it for you.'

"But, instead of looking toward my money, I tried to get around him and as I did—

\* \* \* \* \* \*

"Q. Did you attempt to move around him, is that what you were intending—

"A. Yes, I screamed and I ran around him and, in fact, he grabbed for me—

"Q. Now, wait just a minute.

"How—how loudly did you scream?

"A. As loud as I could.

"Q. All right. Were you in a state of panic or what was your condition at that time?

"A. I was totally terrified.

"Q. Okay. What happened next?

"A. I—well, as a matter of fact he grabbed for me and, in fact, he got hold of me once and I got away and as I ran, I ran toward this room— this door—

"Q. Why were you going for that door?

"A. Because I was afraid maybe he had locked the front door and I couldn't get out and I knew that door was open because I had just come through it.

"Q. All right. Did you make it to the door?

"A. No.

"Q. What happened?

"A. I got—I got right here and he slammed the door behind me as loud as he could and—and said, 'I'll kill you if you do that again.'

"Q. Okay. Now, I know this is difficult for you, but what happened then?

"A. And then, I said—I said, 'Oh,' and I struggled with him and screamed and he grabbed my wrist—he grabbed my wrists right about here right above my arms and held them and he said, 'Don't you move again, don't you try that again, you try it again and I'll kill you.'

"Q. Okay. Were you frightened at that point?

"A. I was totally terrified.

"Q. Were you in fear that he might carry out this threat?

"A. Yes.

"Q. Okay. What happened then after you ran for the door?

"A. Well, he was holding my arms and I said, 'Look, you just want some money, and he—he was very agitated, he was very angry.

"And, I said, 'Okay, okay, I will get you some money,' and I tried to calm myself because I thought the only way out of this has to be calm. I don't know what else to do.

"So, he took my arms above the wrists and he pulled me into the dining room area—

\* \* \* \* \* \*

"Q. Okay. What happened next then?

"A. And so, there is a divan here and he just pulled me over and sat me down on the divan, and I remember thinking, 'Now, what else can I do?'

\* \* \* \* \* \*

"Q. What did he say then?

"A. He said, 'Oh, no, don't you move.'

"In fact, as I said, I jumped, I tried to get away at that point because he was sitting down and I thought, 'Now is my chance,' and he said, 'Don't you do that again, I'll kill you.'

"Q. Okay. I assume you were terrified at this point.

"And what did you do then?

"A. And so, I said,—well at that point—when he said, 'I'll kill you,' again, he moved across me, took his arms and moved them across my body and I said, 'Oh, no, you don't want to do that,' and then he said, 'Oh yeah, I'm going to do that.'

"I said, 'you just want money.'

"He said, 'No problem.'

"I said, 'No problem, I'll get you the money,' and he said, 'Oh, no, we're going into the bedroom.'"

Appellant then dragged the complaining witness into the bedroom, where he forced her to engage in acts of sexual intercourse and deviate sexual intercourse. Thereafter, appellant bound the complaining witness' hands and feet with articles of her clothing, and rummaged through the house in search of money, drugs, and a gun. After again threatening to kill the complaining witness, appellant left the house and drove away in her car.

The indictment alleges, in pertinent part, that appellant

"intentionally and knowingly by force, that overcame such earnest resistance as might reasonably have been expected under the circumstances, compel[led] C—— S——, a female not his wife, to submit to sexual intercourse without her consent and the said JAMES WARREN BRIGHT did then and there intentionally and knowingly compel C—— S—— to submit to sexual intercourse by threat of death to be imminently inflicted on C—— S——
. . . ."

V.T.C.A. Penal Code, Secs. 21.02 and 21.-03(a)(2).

Appellant contends that the evidence of aggravation is insufficient because there was no unconditional threat of death to be immediately inflicted prior to the rape, citing *Blount v. State*, 542 S.W.2d 164 (Tex.Cr. App.1976). In *Blount*, we held that where the only threat of death or serious bodily injury was made after the rape, was conditioned on the victim going to the police, and

related to some indefinite time in the future, the threat was not sufficient to satisfy the statutory requirement that the threat be imminent.

■ The instant case is clearly distinguishable from *Blount*. Appellant repeatedly threatened to kill the complaining witness if she resisted him or sought to flee. These threats were made prior to and within minutes of the rape, and were neither conditional nor indefinite as to time.

Appellant argues that the threats of death were directed toward robbery, not rape. This is an overly restricted reading of the testimony. Appellant seized the complaining witness, threatened her with death if she attempted to escape, demanded she give him money, and raped her. It is both irrational and contrary to the evidence to suggest that the complaining witness did not consider the appellant's death threats when she submitted to the rape. We hold that the evidence is sufficient to establish that appellant compelled the complaining witness to submit to the rape by threat of the imminent infliction of death.

■ Appellant contends that evidence of a prior conviction offered at the punishment phase of the trial should not have been admitted because the conviction and probation were not established beyond a reasonable doubt. The State sought to prove the prior conviction by the testimony of Don Davis. This testimony, in its entirety, is as follows:

"Q. Would you please state your name for the record?

"A. Don Davis.

"Q. Mr. Davis, how are you employed?

"A. I am a counselor at Trinity University in San Antonio.

"Q. And, how long have you lived in San Antonio?

"A. Approximately 28 years.

"Q. What did you do prior to your current position there with the University?

"A. I was a—I was an adult probation officer for the Bexar County—Bexar County in San Antonio.

"Q. How long did you serve as an adult probation officer?

"A. I was there two years.

"Q. Okay. While serving in that capacity, did you have an occasion on the 7th day of January, 1974, to encounter one James Warren Bright?

"A. Yes.

"Q. Is that man in the Courtroom today?

"A. Yes, sir, he is.

"Q. Where is he seated, please?

"A. He's seated right there behind this gentleman here. (indicating the Defendant.)

"Q. All right. I am now pointing at the Defendant in the cause now before the Court—

"A. Yeah, the man standing right there.

"Q. Okay. Would you explain to the jury the nature of your encounter—what brought on this encounter?

"A. The man was arrested for burglary and pleaded guilty in the 186th District Court, found guilty in the 186th District Court, and the case was sent to the probation office and I was made probation officer to investigate the case.

"I did the pre-sentence investigation and that's where I met James Warren Bright.

"Q. Was he placed on probation?

"A. Yes, he was.

"Q. And, was he represented by an attorney when he plead guilty?

"A. Yes, sir.

"Q. And, was that Mr. Robert Spicer, is that correct?

"A. Yes, sir.

"Q. Okay.

"MR. WOODAL: We will pass the witness.

"MR. MILLSAP: No questions, Your Honor.

"THE COURT: You may step down.

"MR. WOODAL: Just one additional question, please.

"Q. Was that in Cause Number 72–1316?

"A. 72–1316.

"Q. Okay. Thank you.

"THE COURT: Anything further, counsel?

"Mr. Millsap, do you have any questions?

"MR. MILLSAP: No, sir."

This testimony establishes that, prior to the instant offense, appellant was indicted for burglary in Bexar County Cause No. 72–1316, and that he entered a plea of guilty. It further establishes that imposition of sentence in that cause was suspended, and appellant was placed on probation. While this testimony would certainly have been subject to an objection on best evidence grounds, appellant voiced no objection whatsoever. In the absence of an objection, we hold that this testimony is competent and sufficient to prove a prior probated sentence. Art. 37.07, Sec. 3(a), V.A.C.C.P.; *Thompson v. State*, 563 S.W.2d 247 (Tex.Cr.App.1978); *Gonzales v. State*, 532 S.W.2d 343 (Tex.Cr.App.1976).

■ The trial court's charge to the jury contained the following definition:

" 'Criminal episode' means all conduct incident to the attempt or accomplishment of a single criminal objective, even though the harm is directed toward or inflicted upon more than one person."

Appellant contends that by so charging the jury, the trial court authorized a conviction on a theory of law not alleged in the indictment. Since appellant did not object to this portion of the charge, we are presented with reversible error only if the error alleged is fundamental.

■ It is now established that if that portion of the charge which applies the law to the facts authorizes a conviction on a theory not alleged in the indictment, the charge contains fundamental error. *Cumbie v. State*, 578 S.W.2d 732 (Tex.Cr.App. 1979) and the cases therein cited. However, the alleged error complained of by appellant appears in that portion of the charge

setting out definitions of pertinent words and phrases. That portion of the charge applying the law to the facts does not authorize a conviction on an unalleged theory, and does not contain the term "criminal episode."

From our examination of the record, it does not appear that the error, if any, in defining the term "criminal episode" for the jury was calculated to injure the rights of appellant, nor did it deny him a fair and impartial trial. Art. 36.19, V.A.C.C.P. This ground of error is overruled.

■ In two grounds of error, appellant contends that during jury argument the prosecutor improperly expressed a personal and emotional involvement in the case, and personally attacked appellant's appointed defense counsel. No objection was voiced to these remarks, which were not so inflammatory and prejudicial as to have rendered an instruction to disregard insufficient to remove the prejudice. These grounds of error are overruled.

■ On August 24, 1976, during pretrial proceedings, appellant requested that he be permitted to represent himself. This request was granted, and from that date until September 14, the day trial testimony began, appellant acted as his own counsel. On September 3, appellant made the following request:

"THE DEFENDANT: Your Honor, I have requested a set of volume—five books, legal books—legal books that were in a five-volume set and I only received one book.

"I did get the Code of—the Penal Code, Your Honor, but I only got one book of the Code of Criminal Procedure.

"THE COURT: The Code of Criminal Procedure that has been furnished to you is the entire Code of Criminal Procedure, as amended and is up to date in all respects and constitutes the entire Code of the Texas Code of Criminal Procedure."

Appellant contends that the trial court erred by not furnishing him the annotated Code of Criminal Procedure.

Appellant relies on *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), which holds that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. In the instant case, an attorney was appointed to represent appellant, and even after appellant's request to represent himself was granted, this attorney was instructed by the trial court to continue as standby counsel. Thus, appellant was provided adequate assistance from persons skilled in the law.

Moreover, the only harm appellant contends he suffered due to his lack of personal access to an annotated code is the denial of his motion for a continuance at the close of the State's evidence. The motion was made in order that subpoenas for defense witnesses could be served, and was denied, in part, because the subpoena applications were not sworn. Appellant argues he did not know of this requirement because he did not have an annotated code. However, the requirement that subpoena applications be sworn is clearly stated in the text of Art. 24.03, V.A.C.C.P., not in the annotations. This ground of error is without merit.

The judgment is affirmed.