William S. MORGAN, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 05–81–00369–CR.

Court of Appeals of Texas, Dallas.

Aug. 12, 1982.

Rehearing Denied Dec. 6, 1982.

Roy L. Merrill, Jr., Dallas, for appellant.

Henry Wade, Dist. Atty., John H. Hagler, Asst. Dist. Atty., Dallas, for appellee.

Before ROBERTSON, STEPHENS and VANCE, JJ.

STEPHENS, Justice.

William S. Morgan, Jr., was convicted of violating the Texas Securities Act, Tex.Rev. Civ.Stat.Ann. art. 581–29(C)(1) (Vernon

Supp.1982). After a guilty verdict was returned by a jury, punishment was set by the court at ten years confinement in the Texas Department of Corrections and a $10,000 fine. We affirm.

On appeal, Morgan raises twenty grounds of error. Ground one complains that the trial court erred in increasing the length of his sentence after he gave notice of appeal. Ground two alleges the evidence is insufficient to prove that he sold an investment contract. Grounds three, four and six complain of the trial court's failure to quash the indictment on appellant's motion. Ground five alleges the trial court did not have jurisdiction over the transaction for which he was prosecuted. Ground seven complains of the trial court's refusal to sever the third count of the indictment. Grounds eight through fifteen complain that the trial court erred in overruling his objections to the court's charge and in refusing certain requested charges. Grounds sixteen through nineteen contend that the trial court improperly sustained objections by the State to questions propounded by him. Finally, ground of error twenty alleges that he was denied his rights by the trial court's restriction of his cross-examination of the complaining witness.

## Evidence

The evidence shows that Morgan, a broker with C.H. Grant Associates, first contacted the complaining witness, Wayne E. Gilbert, in late 1978. Morgan was "bullish on gold" and encouraged Gilbert to purchase a "deferred contract." Gilbert purchased a deferred contract for one kilogram of gold bullion and, eventually, he exercised his option to buy the actual bullion and take delivery. Shortly thereafter, appellant called Gilbert with the news that he had left C.H. Grant Associates and established his own firm. He stated that he was offering deferred delivery contracts in gold at prices less than other brokers. Gilbert paid Morgan $7,249.83 to purchase gold bullion, which was never delivered.

At Morgan's urging, Gilbert also purchased a "deferred delivery contract" for five kilograms of gold at a price of $1,735.00. This transaction was the basis for the prosecution from which Morgan now appeals. The contract was at the current market price of $250.00 per ounce of gold and was to extend for three months from March 20, 1979. As explained by appellant, the contract allowed Gilbert to control five kilograms of gold for three months. At the end of three months, he had three options:

(1) renew the contract at the original "strike price" of $250.00 per ounce for three months for an additional expenditure of $1,000.00.

(2) liquidate the contract. Gilbert would only realize a profit if the market price had increased in excess of ten points or $10.00 an ounce. If the market price had not risen ten points or had fallen, Gilbert would lose no more than his initial investment of $1,735.00 and would not be liable for any additional payment.

(3) purchase and take delivery of five kilograms of gold bullion by paying the strike price per ounce plus five percent. This option would involve a substantial expenditure of money.

During the three month period, Morgan sent Gilbert various articles concerning gold prices and spoke with him several times on the telephone. According to Gilbert, Morgan was always "bullish" on gold. Toward the end of the period, Gilbert advised Morgan that he wanted to sell the contract at such time as he could make a "reasonable profit." Subsequently, Morgan notified Gilbert that he had sold the contract for $274.00 per ounce. Gilbert never received his profit, despite frequent attempts to contact Morgan.

The record shows that Morgan deposited $5,000.00 in January 1979, with E.F. Hutton, to open a commodity account in gold futures. Deferred delivery contracts were distinguished from futures contracts. E.F. Hutton dealt only in futures contracts. In February 1979, the account was closed because of Morgan's failure to make margin calls necessitated by a falling market price. The account balance owing at the time of

trial was $2,271.02. Morgan also opened futures contracts in gold, silver and copper at Merrill Lynch in March, April and May 1979 and took a net loss of approximately $200.00. All of the above accounts were in Morgan's name exclusively.

In addition to the testimony of Wayne Gilbert, the jury also heard evidence from numerous other individuals who had invested money with Morgan in similar transactions. The jury found Morgan guilty of a violation of the Texas Securities Act by committing fraud in the sale of an investment contract.

## Trial Court's Jurisdiction

Morgan's fifth ground of error challenges the jurisdiction of the trial court. He contends that the indictment alleges the sale of a commodity future, and that the state courts have no jurisdiction over such a transaction by virtue of the Commodity Exchange Act, 7 U.S.C.A. § 13a–2 (1980). In fact, the indictment alleges the sale of an "investment contract." Securities, as defined in the Texas Securities Act, Tex. Rev.Civ.Stat.Ann. art. 581–4(A) (Vernon 1964), include investment contracts. The exclusive jurisdiction of the Commodity Futures Trading Commission (CFTC) is limited to "accounts, agreements . . ., and transactions involving contracts of sale of a commodity for future delivery . . . ." 7 U.S.C.A. § 2. Consequently, if the transaction at issue was not a commodities futures contract, no claim of exclusive CFTC jurisdiction can be made. *See Securities & Exchange Commission v. G. Weeks Securities, Inc.,* 483 F.Supp. 1239, 1244 (W.D.Tenn. 1980).

■ A futures contract has been defined as "an agreement obligating the investor to purchase certain commodities at a future date . . . ." *See Securities & Exchange Commission v. G. Weeks Securities, Inc., supra* at 1244; *Clayton Brokerage Co. of St. Louis, Inc. v. Mouer,* 520 S.W.2d 802, 804 (Tex.Civ.App.—Austin, *writ ref'd n.r.e.), dism'd as moot on rehearing per curiam,* 531 S.W.2d 805 (Tex.1975). Additionally, a futures option entails an agreement by which the purchaser buys the right to buy or sell a futures contract before a future date. *See Securities & Exchange Commission v. G. Weeks Securities, Inc., supra* at 1244. We conclude from the evidence that Gilbert did not buy a futures contract as he was not required to take delivery of the gold bullion at the end of the three month period. Similarly, we conclude that Morgan did not sell a futures option since Gilbert did not acquire a bona fide option to buy or sell an underlying futures contract. No actual futures contract was ever delivered to him. *See Searsy v. Commercial Trading Corp.,* 560 S.W.2d 637, 639 (Tex.1977). We note also that CFTC jurisdiction is exclusive only as to futures transactions conducted "on a contract market designated pursuant to section 7 . . . or any other board of trade . . . ." 7 U.S.C. § 2. *See Securities & Exchange Commission v. G. Weeks Securities, Inc., supra* at 1245. It is clear from the evidence that Gilbert's transaction with Morgan was neither conducted on a designated contract market nor a board of trade. Consequently, even if the "deferred delivery contract" purchased by Gilbert were a futures contract or futures option, exclusive CFTC jurisdiction would not exist. *See Securities & Exchange Commission v. G. Weeks Securities, Inc., supra* at 1245. Appellant's fifth ground of error is overruled.

## Sale of Investment Contract

■ In his second ground of error, Morgan contends the evidence is insufficient to prove he sold an investment contract. In determining the existence of an investment contract, the test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others. *Securities & Exchange Commission v. W.J. Howey Co.,* 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244, 1251 (1946); *Searsy v. Commercial Trading Corp., supra* at 640. In the instant case, there was an "investment of money" with the "expectation of profits." Morgan maintains that the "common enterprise" element, the first prong of the *Howey* test, is lacking because the success of the

investment was totally dependent upon the market price of gold. The evidence shows that Morgan pooled the funds he received from his customers to open various commodity accounts in his own name at E.F. Hutton and Merrill Lynch. It was apparent that the success or failure of his own investments determined whether or not funds were available to pay his customers their profits. Such a relationship has been described as "vertical commonality" between investor and promotor, in that the success of the investor is dependent upon the efforts and success of the promotor. *See Searsy v. Commercial Trading Corp., supra* at 640; *King Commodity Co. of Texas v. State,* 508 S.W.2d 439, 443 (Tex.Civ.App.—Dallas 1974, no writ). We conclude that a "common enterprise," the first prong of the *Howey* test, was established in this case.

■ The final prong of the *Howey* test requires a finding that profits "come solely from the efforts of others." Texas courts have interpreted the test as "whether the efforts made by those other than the investor are undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *Searsy v. Commercial Trading Corp., supra* at 641. Gilbert testified that Morgan solicited his business and advised him repeatedly that the gold market was good. Gilbert stated further that he relied upon Morgan to handle his investment in a profitable manner. He authorized Morgan to sell his contract once a "reasonable profit" had been realized. As previously discussed, a profitable outcome of Gilbert's investment did not depend solely on the market price of gold, but on the success of Morgan's own ventures and his management of investors' funds. Morgan's efforts were "undeniably significant" in determining the success or failure of his customers' investments. *See Searsy v. Commercial Trading Corp., supra* at 641; *Clayton Brokerage Co. of St. Louis v. Mouer, supra* at 809. The evidence is sufficient to prove that Morgan sold an investment contract.

### Evidence of Fraud

■ Morgan also contends that the evidence is insufficient to prove the allegations of the indictment that he committed fraud by failing to disclose that investors' payments would be withdrawn and used by appellant for non-investment purposes. The record shows that Morgan deposited his investors' funds in a common account from which he paid personal expenses and past investors who had realized a profit. Gilbert testified that Morgan did not inform him that investors' funds would be used in such a manner, and that had he done so, Gilbert would not have purchased a contract from him. The evidence is sufficient to support the allegation of the indictment.

### Failure of Indictment to State an Offense

■ Morgan contends that the trial court erred in overruling his motion to quash the indictment for its failure to state an offense under the Texas securities laws. He complains of the omission of certain statutory language which he contends is essential to support his conviction for engaging in securities fraud.[1] Morgan's contention is without merit. The indictment charges an offense under Tex.Rev.Civ.Stat.Ann. art. 581–29(C)(1) (Vernon Supp.1982) which prohibits fraud in the purchase or sale of securities. *See also* Tex.Rev.Civ.Stat.Ann. art. 581–4(F) (Vernon 1964). The language quoted by Morgan, as being erroneously omitted from the indictment, refers to conduct prohibited under art. 581–29(C)(3). Since he was not charged with a violation of subsection 3 of the art. 581–29(C), the omission of the quoted language was not error. In *Morgan v. State,* 557 S.W.2d 512 (Tex.Cr. App.1977), relied upon by Morgan, the indictment was drawn under article 581–29(C)(3). Appellant's fourth and sixth grounds of error are overruled.

---

1. The indictment charged Morgan with three counts of securities fraud. Each count alleged that Morgan committed fraud by failing to disclose certain information, "said information being material fact." Morgan contends the indictment should have alleged further that the material fact was "necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading."

### Failure of Indictment to Give Notice

Morgan contends that the trial court erred in overruling his motion to quash the indictment for its failure to give notice of the nature or term of the security allegedly sold by him. The indictment alleged that Morgan sold "an investment contract, as evidenced by one June contract of gold, consisting of five kilograms or 160 ounces, for an investment of one thousand seven hundred and thirty-five dollars by Wayne E. Gilbert . . . ." The entire transaction with Gilbert was sufficiently identified to give Morgan fair notice of the particular offense with which he was charged. See Shappley v. State, 520 S.W.2d 766, 771 (Tex.Cr.App.1974). At the time he entered his plea of not guilty, Morgan stated through counsel that he understood the charge against him. The basic requirements of Tex.Code Crim.Pro.Ann. arts. 21.-04 and 21.11 (Vernon 1966) are fully satisfied in the indictment. Appellant's third ground of error is overruled.

### Failure to Grant Severance

Morgan complains of the trial court's refusal to grant his motion for severance of the third count on the indictment. The third count alleged that Morgan committed fraud by failing to disclose that he had been previously convicted of theft of property of the value of at least $10,000.00. He contends that the refusal to sever was highly prejudicial to the jury's consideration of the first two counts. It should be noted that appellant was convicted of the second count of the indictment. The right to a severance is mandatory only when two or more offenses arising out of the same criminal episode [2] are consolidated for trial. See Tex.Penal Code Ann. §§ 3.02, 3.04 (Vernon 1974); Waythe v. State, 533 S.W.2d 802, 804 (Tex.Cr.App.1976). In the instant case, the offenses alleged did not arise out of the same criminal episode, but out of the same transaction. When an indictment alleges two or more offenses arising out of the

same transaction, the trial court may compel the State to make an election or submit each of the counts to the jury with the instruction that a conviction may be had on only one of them. See Koah v. State, 604 S.W.2d 156, 161 (Tex.Cr.App.1980). The trial court followed the second alternative in this case. No error is shown. Appellant's seventh ground of error is overruled.

### Restriction of Cross-Examination

In grounds of error sixteen through twenty, Morgan complains that the trial court erred in sustaining several objections by the State to his cross-examination of the complaining witness because the questions required speculation by the witness. Morgan contends further that he was denied the right to effective assistance of counsel as a result of the trial court's restriction of his right to confront and cross-examine the witnesses against him. A defendant is entitled to a fair opportunity to cross-examine a State's witness. However, cross-examination must comply with the rules of evidence, and its scope lies within the sound discretion of the trial court. See Wright v. State, 491 S.W.2d 936, 939 (Tex.Cr.App.1973). The record reveals that Morgan was given ample opportunity to cross-examine the witness concerning the subject matter of the objectionable questions. We cannot say that the trial judge abused his discretion in sustaining the State's objections on these four occasions. Grounds of error sixteen through twenty are overruled.

### Court's Instruction as to Prior Conviction

Morgan contends that the trial court erred in overruling his objection to the sufficiency of the court's instruction limiting the jury's consideration of his prior conviction of theft. Count three of the indictment charged appellant with committing fraud by failing to disclose his prior theft conviction. The jury was instructed to consider the evidence of the prior conviction on the issue whether Morgan had, in

---

**2.** "Criminal episode" is defined as the repeated commission of any one offense defined in Title 7 of the Penal Code (Offenses Against Property). Tex.Penal Code Ann. § 3.01 (Vernon 1974).

fact, been convicted of the past offense. In considering a charge on appeal, the appellate court will not review isolated portions, but will consider the charge as a whole. *Bailey v. State,* 532 S.W.2d 316, 322 (Tex.Cr. App.1975). The charge permitted the jury to find Morgan guilty of only one count of the indictment. He was found guilty of the *second* count of the indictment which involved no consideration of the prior theft conviction. Consequently, error, if any, in the limiting instruction was harmless. Appellant's eighth ground of error is overruled.

### Definition of "Investment Contract"

In grounds of error nine through twelve, Morgan contends that the trial court erred in overruling certain of his objections to the court's charge and his requested charges concerning the definition of an investment contract. The trial court instructed the jury in accordance with the definition contained in *Searsy v. Commercial Trading Corp.,* 560 S.W.2d 637, 640 (Tex.1977). Morgan's requested charges were drawn primarily from the earlier case of *McConathy v. Dal Mac Commercial Real Estate, Inc.,* 545 S.W.2d 871, 875 (Tex.Civ. App.—Texarkana 1976, no writ), which involves a distinguishable set of facts. We conclude that the court's instructions adequately protected Morgan's rights, consequently, his special requested charges were properly refused. *See Parks v. State,* 437 S.W.2d 554, 557 (Tex.Cr.App.1969). Grounds of error nine through twelve are overruled.

### Definition of "Material Fact"

In grounds of error thirteen through fifteen, Morgan complains that the trial court erred in overruling his objections to the trial court's instructions defining "material fact." Appellant was indicted under Tex.Rev.Civ.Stat.Ann. art. 581–29(C)(1) (Vernon Supp.1982). The court's definition of "material fact" was appropriate to a prosecution under this subsection. *See* Tex.Rev.Civ.Stat.Ann. art. 581–4(F) (Vernon 1964). Further, the application portion of the court's charge did not assume the existence of a material fact since each count was prefaced by the phrase "if ... you find and believe from the evidence in this case beyond a reasonable doubt ...," and the jury was required to find "that the said information was a material fact ...." Appellant also contends that the abstract portion of the charge assumes the existence of a security in the course of defining "material fact." In reviewing the charge as a whole, we note that the portion applying the law to the facts authorized a conviction *if* the jury found from the evidence beyond a reasonable doubt that appellant sold a security, to wit: an investment contract. Error, if any, in the abstract portion of the charge was not calculated to injure the rights of appellant, nor did it deny him a fair and impartial trial. *See* Tex.Code Crim.Pro.Ann. art. 36.19 (Vernon 1981); *Bright v. State,* 585 S.W.2d 739, 743–44 (Tex.Cr.App.1979). Grounds of error thirteen through fifteen are overruled.

### Cumulated Sentence

In his first ground of error, appellant contends the trial court erred in cumulating his sentence in the instant case with that from a previous conviction after he gave notice of appeal. The statement of facts contains a transcription of the sentencing proceedings on December 12, 1979. After pronouncing sentence in the instant case, the trial court instructed appellant that he had ten days in which to give notice of appeal. Appellant gave his notice of appeal at that time. A discussion ensued between the attorneys and the trial court concerning representation on appeal and bond. The prosecutor requested that bond be denied pending appeal due to the fact that appellant had committed the instant offense while on bail following a previous conviction for theft. The trial court asked for the jacket in the other case, and the discussion on bond concluded shortly thereafter with the court setting the State's motion for consideration on a future date. The court proceeded to announce when the sentence would commence and, over appellant's objection, cumulated his sentence with the

earlier theft conviction. Appellant requested leave to file a motion for the trial judge to recuse himself from the sentencing proceedings, and leave was granted. On December 27, 1979, the court signed an order granting appellant's motion to recuse himself, and he vacated the sentence imposed. On February 29, 1980, appellant appeared for sentencing before another judge who properly cumulated his sentence for securities fraud with his prior sentence for theft. Notice of appeal was given.

In *Ex parte Reynolds,* 462 S.W.2d 605, 608 (Tex.Cr.App.1970), a cumulation order entered several days after sentence was imposed was held invalid because appellant had been incarcerated and suffered punishment under the initial sentence. In the instant case, appellant moved for the judge to recuse himself, and the judge responded by granting appellant's motion and vacating the sentence. We are of the opinion that any error in the original sentencing was cured by the trial court's action taken at appellant's request. *Cf. Horton v. State,* 621 S.W.2d 632, 634 (Tex.Cr.App.1981) (appellant by own actions may be precluded from complaining of occurrence that would otherwise be objectionable). Appellant's first ground of error is overruled.

Affirmed.

## ON MOTION FOR REHEARING

On Motion for Rehearing, appellant complains that the trial court's second cumulation order is void for its failure to meet the requirements specified in *Ward v. State,* 523 S.W.2d 681 (Tex.Cr.App.1975). We agree. It has been held repeatedly that cumulation orders must contain:

(1) The trial court number of the prior conviction;

(2) the correct name of the court where the prior conviction was taken;

(3) the date of the prior conviction;

(4) the term of years of the prior conviction, and

(5) the nature of the prior conviction.

*Diaz v. State,* 608 S.W.2d 686 (Tex.Cr.App. 1980); *Young v. State,* 579 S.W.2d 10 (Tex. Cr.App.1979); *Ward, supra.*

The cumulation order in this case stated: "Sentence in this cause to begin upon completion of time being served in F75–10377–LJ, The State of Texas v. William S. Morgan, Jr., which was imposed on February 22, 1976."

The cumulation order is silent as to all but the third requirement, and thus is void.

Our opinion of August 12, 1982 is modified to hold the cumulation portion of the sentence void. It is ordered that the sentence imposed on February 29, 1980 by the Criminal District Court No. 3 of Dallas County in Cause No. F79–7453–HJ is corrected to run concurrently with the sentence imposed on February 22, 1976 in Cause No. F75–10377–LJ. The case in all other matters is affirmed.

A copy of this order shall be delivered to the Texas Department of Corrections.