Opinion issued November 15, 2012.



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-00861-CR
_____

**JEREMY MARTIN POTIER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 232nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1263341**

---

### MEMORANDUM OPINION

A jury convicted Jeremy Martin Potier of the felony offense of capital

murder, and the trial court assessed his punishment at confinement for life. Potier

appeals his conviction on the sole ground that the trial court erred in refusing his request for a jury instruction on the affirmative defense of duress. We affirm.

## Background

The State charged Potier with capital murder, and a jury convicted him. Because Potier does not challenge the sufficiency of the evidence to support the jury's conviction, we will discuss the evidence only as it is relevant to Potier's issue on appeal.

The State presented evidence that Potier and two co-defendants, Lewis and Murray, arranged a drug transaction at Potier's apartment. During the transaction, a dispute arose between the defendants and the two drug sellers, who are the complainants. As a result, the sellers were bound and gagged with duct tape and later suffocated to death. Potier admitted to participating in both victims' deaths. He also admitted, consistent with eyewitness testimony, that Murray was not present during most of the time when he and Lewis held the victims captive. But Potier indicated in his police interview that he and Lewis acted on instruction from Murray, who told them what to do with the victims over the telephone. It is uncontroverted that Murray was not present in the apartment at the time of the victims' murders. An eyewitness to one of the murders testified that only he, Lewis, and Potier were present in the apartment when Potier placed a plastic bag

2

over one victim's head and taped the bag around the victim's neck until he suffocated to death.

**Preservation of Error**

The State contends that Potier waived his objection to the trial court's decision not to submit a duress instruction to the jury. The State recognizes that Potier orally requested a duress instruction but asserts that he "did not file a written instruction with the court nor did he dictate the jury instruction into the record as required by statute." The State further points out that there are "at least four distinct types of statutory duress," and Potier "did not specify which manner of duress he wanted included in the jury charge." We conclude that Potier's objection was sufficient to preserve error with respect to his complaint on appeal.

The Texas Code of Criminal Procedure provides two distinct avenues for preserving error with respect to a jury charge. *See* TEX. CODE. CRIM. PROC. ANN. art. 36.14 (West 2007), 36.15 (West 2006); *see also Vasquez v. State*, 919 S.W.2d 433, 435 (Tex. Crim. App. 1996) ("We have interpreted articles 36.14 and 36.15 as dealing with those two distinct situations: an *objection* to the charge and a *requested special instruction,* respectively."); *Starks v. State*, 127 S.W.3d 127, 133 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) ("In order to preserve error relating to a jury charge, there must either be an objection or a requested charge."). Under article 36.14, a defendant must object to an error in the jury charge and

3

obtain a ruling on the objection. TEX. CODE. CRIM. PROC. ANN. art. 36.14; *see Vasquez*, 919 S.W.2d at 435. Under article 36.15, a defendant must request a special instruction in the charge either in writing or by dictation to the court reporter; no objection is necessary. TEX. CODE. CRIM. PROC. ANN. art. 36.15; *see Vasquez*, 919 S.W.2d at 435 ("[U]nder art. 36.15, if the defendant requests a special charge no objection is required to preserve error. All that is necessary under art. 36.15 is that the requested charge be in writing or dictated to the court reporter.") (citations omitted).

A defendant may preserve error by objection under article 36.14 or by request under article 36.15; if he properly satisfied one error-preservation procedure, he need not also satisfy the other. *See Vasquez*, 919 S.W.2d at 435 (holding that defendant's request for special charge preserved error without objection to charge). Thus, if Potier properly objected to the charge under article 36.14, he was not required to submit a requested charge under article 36.15. *See Vasquez v. State*, No. PD-0321-11, 2012 WL 4511366, at *5 (Tex. Crim. App. Oct. 3, 2012) (reviewing charge error raised through oral objection and request only); *Gaspar v. State*, 327 S.W.3d 349, 355 (Tex. App.—Texarkana 2010, no pet.) (holding that defendant's objection to failure of charge to include instruction on defense of necessity preserved error in absence of proposed charge in writing or dictated on record); *see also Starks*, 127 S.W.3d at 133 (stating that, because

4

defendant failed to submit jury charge containing instruction on self-defense, he had to preserve error by making specific objection to trial court's charge).

To preserve error, a charge objection must state the legal basis for the objection with sufficient specificity to draw the court's attention to the complaint the defendant raises on appeal. *Starks*, 127 S.W.3d at 133 (citing TEX. R. APP. P. 33.1, *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990), and *Little v. State*, 758 S.W.2d 551, 564 (Tex. Crim. App. 1988)). An objection is sufficient if the record indicates that the trial judge understood the defendant's request to encompass matters about which appellant complains on appeal. *Chapman v. State*, 921 S.W.2d 694, 695 (Tex. Crim. App. 1996); *Carmen v. State*, 276 S.W.3d 538, 541 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

After some discussion off the record, Potier's counsel requested that the trial judge submit a duress defense in the jury charge. The trial judge instructed Potier's counsel that counsel need not reiterate the cases on which he was relying—cases that had apparently been discussed off the record—for the requested duress instruction. The trial judge then stated, "The basis for the Court's ruling is that there is no evidence of an imminent threat and therefore it's not going to submit duress." Thus the record demonstrates that the trial judge understood Potier's objection to encompass the matter of which he now complains on appeal—the absence of a jury instruction on duress. *See* TEX. PENAL CODE ANN. § 8.05(a)

5

(West 2011) ("It is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another.").

The State cites no authority for its contention that Potier was required to distinguish between "four distinct types of statutory duress: the threat of imminent death to self, the threat of imminent serious bodily injury to self, the threat of death to another, or the threat of imminent serious bodily injury to another." The trial record demonstrates that Potier contended at trial that there was a threat of imminent serious bodily injury or death to himself, and we find no authority for requiring Potier to make a distinction based on whether the threat was likely to cause death or only serious bodily injury. In either case, the statute authorizes a single defense: duress, as codified in section 8.05(a). *See* TEX. PENAL CODE § 8.05(a).

We hold that Potier preserved his jury charge complaint for appeal.

## Duress Instruction

In his sole issue, Potier argues the trial court should have granted his request for a jury instruction on duress because his co-defendant, Murray, compelled his involvement in the murders by threat of serious bodily injury. We review jury charge error by a two-step process. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). First, we determine whether error exists in the charge. *Id.* We review a

trial court's decision not to include an instruction on a defensive issue in the charge for an abuse of discretion, and we view the evidence in the light most favorable to the defendant's requested submission. *See Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006); *Love v. State*, 199 S.W.3d 447, 455 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Second, if error exists, we review the record to determine whether the error caused sufficient harm to require reversal of the conviction. *Ngo*, 175 S.W.3d at 744. When the defendant properly objected to the error in the charge, reversal is required unless the error was harmless. *Id.* at 743; *Reynolds v. State*, 371 S.W.3d 511, 521 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

The Penal Code defines the defense of duress: "It is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another." TEX. PENAL CODE § 8.05(a). In this context, compulsion exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure. *Id.* § 8.05(c). The defense of duress is not available to a defendant who "intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion." *Id.* § 8.05(d).

7

When the evidence raises a defensive theory, the theory must be submitted to the jury regardless of whether the supporting evidence is strong, feeble, unimpeached, contradicted, credible, or incredible. *See Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007); *Reynolds*, 317 S.W.3d at 521–22; *see also Brown v. State*, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997). Potier contends that the evidence raised a question of fact on the defense of duress in the following manner:

> In Appellant's case, the threat of death or serious bodily injury was imminent. Appellant had seen Murray pull a gun on the complainants when they first arrived so he knew Murray was armed and had the capability and intention to carry out his threat immediately. Murray was in Appellant's presence when he told him that they had to get rid of the complainants because they could identify them. Murray also made it clear what would happen to Appellant if he did not comply. Murray told him that he would have to do something to Appellant and that Appellant could not fight a bullet, a clear threat to do serious bodily injury to Appellant if Appellant did not do as commanded. The threat was predicated on Appellant's failure to commit the crime immediately. The evidence raised the affirmative defense and the jury should have been instructed thereon.[1]

The evidence Potier relies on for this argument is a recording of Potier's police interview after the murders, which was played at trial. In the interview, Potier told the interviewing officer that a dispute arose between the victims and Potier and his co-defendants, resulting in Murray's pulling a gun and Potier's

---

[1] The State challenges the accuracy of Potier's description of the evidence in the record.

punching one of the victims in the face. They subdued the victims,[2] after which Murray left the apartment. Potier and Lewis[3] held the two victims captive until Murray returned. When Murray returned to the apartment, they discussed what to do with the two victims. According to Potier, he told Murray, "if you let them go, they're gonna kill us because they know exactly where I stay." Potier stated that Murray then told him, "[I]f you don't do it, then I'm gonna have to do something to you." Potier told the officer that he was a "big guy" but that there was "no way I can fight a bullet." Potier says he then walked out. Murray told Lewis to "handle it" and left to sell the narcotics they had taken from the victims (which the victims had brought to sell to Potier and the co-defendants). Murray was supposed to return with the proceeds from the sale.

Potier stated that, after Murray left, he resisted participating in the murders but Lewis told him that "if we don't do this, [Murray's] gonna get us . . . so we either we can do it and have [Murray] on our side or we can not do it and let them go and we still gonna die." Potier next described suffocating the first victim, then going to have a cigarette. Potier told the officer that he was afraid for his life at that time. Potier stated that Murray called to ask "are ya'll done," and Lewis told

---

[2]     Initially Potier told the officer that Lewis bound both of the victims with duct tape, but after further questioning Potier stated that he taped up one of the victims and Lewis taped up the other.

[3]     Other people also came and left from the apartment during this time, including Lewis's younger brother.

Murray that they had killed one of the victims but still had the other left to kill. Potier then described suffocating the second victim.

Once both victims were dead, according to Potier, Lewis inquired about disposing of the bodies. Potier responded that Murray was taking care of that, but Murray subsequently called and informed Potier and Lewis that he could not come to dispose of the bodies until the following day. Potier and Lewis spent the night with the bodies in the apartment. The next day, Murray called again, requesting that Potier and Lewis dispose of the bodies. Potier told the interviewing officer that he resisted this, arguing that he had done enough already. He described transporting the bodies, then a conversation in which Lewis asked Murray about Lewis's and Potier's payment for the murders, to which Murray responded that he was not going to pay them, but rather, they had done him a favor. Potier states that he subsequently had a disagreement with Murray over a girl "and that's when I moved on him."

In further questioning, Potier provided the officer with detailed descriptions of the process of suffocating the two victims, disposing of their bodies the following day, getting rid of evidence, and sharing in the victims' shoes and jewelry.

In light of the evidence, we must uphold the trial court's ruling because there is no evidence of an "imminent" threat. An imminent threat has two components of

10

immediacy. *Anguish v. State*, 991 S.W.2d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). "First, the person making the threat must intend and be prepared to carry out the threat immediately." *Id.* (citing *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989) and *Blount v. State*, 542 S.W.2d 164, 166 (Tex. Crim. App. 1976)). Second, the threat must be predicated upon the threatened person's failure to commit the charged offense immediately. *Id.* (citing *Devine*, 786 S.W.2d at 270 and *Blount*, 542 S.W.2d at 166). A threat of death at some indefinite time in the future is insufficient to satisfy the requirement of imminence. *Blount*, 542 S.W.2d at 166. Imminence requires a present threat; threats of future harm alone are not sufficient. *See Devine*, 786 S.W.2d at 270–71.

Although Murray was present in the apartment when the two victims arrived, he was not present at the time of their deaths. Even treating Murray's statement to Potier that "if you don't do it, then I'm gonna have to do something to you" as a threat of death or serious bodily injury, there is no evidence in the record tending to show that Murray was in a position to "carry out the threat immediately" such that the statement "compelled" Potier's actions in murdering the two victims. *See Anguish*, 991 S.W.2d at 886–87. Any threat Murray made to Potier before leaving the apartment was no longer imminent when Murray did not act on it and left Potier in the apartment with the victims. Between the time Murray made the alleged threat and the time Potier participated in suffocating the two victims, Potier

11

had an opportunity to contact the police, let the victims go, or simply leave the apartment. Similarly, any threat Murray may have made over the telephone to Lewis that Lewis then conveyed to Potier could not have been carried out immediately.

Additionally, there is no evidence that Murray gave Potier a deadline by which to commit the murders, much less that Murray compelled Potier to commit the murders immediately. *See id.* at 887 ("there was no evidence that the persons making the threat gave appellant a time by which he was to commit the robbery, much less that he was to commit the robbery immediately"). The threat that Potier claims compelled him to commit the murders thus "fails on both components of immediacy." *See id.* "Accordingly, we conclude the threat was not an imminent threat, as required by section 8.05." *Id.*

We overrule Potier's sole issue on appeal.

## Conclusion

We hold that the trial court did not abuse its discretion by declining to submit an instruction on the defense of duress to the jury. We therefore affirm the trial court's judgment.

Harvey Brown
Justice

Panel consists of Justices Keyes, Massengale and Brown.

Do not publish.   TEX. R. APP. P. 47.4.

12