## CITY OF SAN ANTONIO v. UVALDE ROCK ASPHALT CO. (No. 8068.)

Court of Civil Appeals of Texas. San Antonio. Nov. 21, 1928.

Rehearing Denied Dec. 19, 1928.

Thomson, Dilworth & Marshall and Joseph Ryan, all of San Antonio, for appellant.

Terrell, Davis, Huff & McMillan and Kampman & Burney, all of San Antonio, for appellee.

SMITH, J. On June 14, 1920, the city of San Antonio and Uvalde Rock Asphalt Company entered into a contract whereby the asphalt company agreed and undertook to pave a portion of Nolan street in said city, in consideration of the sum of approximately $30,000, of which amount $8,500 was to be paid in cash by the city and the balance to be evidenced by assignable certificates to be issued by the city and to be paid by property owners whose property abutted on said street. The work of paving, which included necessary "curbing and headers" coextant with the paving, was completed by the paving company and accepted by the city, which paid over its proportion of the agreed price and issued certificates for the balance. There appears to be no question about the regularity or validity of the proceedings by which the improvement was ordered or the contract made by the city. The Uvalde Company succeeded to the rights and liabilities of the Uvalde Rock

Asphalt Company, which was thereby eliminated from the transaction and subsequent litigation.

On January 13, 1922, the city brought this action against the paving company to recover the amount it had paid that company under the contract, and to cancel the certificates issued against the abutting property. It was alleged by the city, and conceded by the paving company, that under the contract the latter was obligated to improve the designated portion of Nolan street by placing thereon "a prepared gravel base of eight inches in thickness after compression and a two-inch Uvalde rock asphalt topping, and to construct the necessary curbing and headers, all at the unit prices shown in said contract." It was alleged by the city that the paving company had not completed said improvements in accordance with the contract, and, quoting from appellant's brief, that by reason thereof "the said portion of Nolan street, after said improvements had been completed, was not fit for the purpose for which it had been built, and that almost immediately after completion it cracked, buckled, crawled and disintegrated so as not to present a smooth-wearing surface for ordinary traffic, and particularly alleged that said company had not placed a two-inch Uvalde rock asphalt topping on said street but had placed a topping of materially less thickness, and further alleged that said topping had not been placed upon a prepared gravel base eight inches in thickness after compression, as required by said contract, and that said gravel base had not been permitted to dry out properly before the topping was laid, and that the gravel used was not clean and free from foreign substance but contained a large portion of clay and dirt, and contained so large a proportion of clay and dirt as to prevent same from being a suitable and sufficient foundation for said paving, all of which was in violation of and contrary to said contract; and said first amended original petition contained a prayer for the recovery of said sum of $8,500.00 theretofore paid by said city as its proportionate share of the cost of said improvements, and further prayed that the contract between the parties and the certificates theretofore issued thereunder be cancelled and annulled."

The paving company claimed that it had done the work in accordance with the specifications in the contract, under the immediate and constant supervision and instructions of the inspectors and representatives, and to the satisfaction of the city, whose engineer had inspected and approved the work, and whose commissioners had approved and accepted the same by resolution duly passed, and had paid the company therefor and issued and delivered to the company the paving certificates thereon; "that said contract provided that in order to prevent dispute and litigation the (City) engineer should in all cases determine the quantity and quality of the kinds of work and the materials which were to be accepted and paid for; and said pleading further set forth in detail the provisions of said contract making the said City Engineer the representative of the city and final arbiter in passing upon the kind and sufficiency of the work and material done under said contract; and further alleged that under said contract the city was given thirty days after the said improvements were completed to raise any objections to the action of the engineer, and that thereafter it was strictly relegated to the remedies provided for in the maintenance bond attached to and made a part of said contract. Said answer then alleged the giving of the maintenance bond in the sum of $6,800.00, and the terms thereof, and the provisions of the contract relative to the remedy on said bond, and again alleged that under said contract and bond the City of San Antonio became relegated to the provisions of the maintenance bond thirty days after the acceptance of the work, and further alleged that said city had actually ratified and confirmed such maintenance bond, not only by its acceptance thereof but by actually calling on the contractor to make repairs on said street on several dates alleged in said pleading, and further alleged that by calling on the said defendant to make such repairs the city had effected an election to rely on the provisions of said contract and bond. Said answer further alleged that by reason of the said city having called on said defendant to make such repairs, and by reason of the fact that such defendant had made such repairs, the city was estopped to seek to recover the consideration paid under said contract or to cancel on behalf of the property owners the assessment certificates issued by virtue thereof. Said answer then specially pleaded Article XI, Section B, of the said contract dated June 14, 1920, and alleged in detail the acceptance by the city of said improvements on the 14th day of April, 1921, and the certificate of the City Engineer certifying to the completion of said improvements in accordance with said contract, which certificate was dated June 14, 1920, and alleged that said city was bound by the action of the City Engineer in making such certificate and by the action of the city in accepting said improvements in accordance with said certificate."

In this connection the paving company specially pleaded the following provisions of the paving contract:

Article X, subd. A: "To prevent all disputes and litigations, the Engineer shall in all cases determine the quantity and quality of the several kinds of work and materials which are to be accepted or paid for under this contract, and he shall determine all questions in relation to the work and materials and the construction or constituents thereof; and he shall also decide every question which

may arise in connection with the work required or executed under this contract; and all other matters as herein provided; and the estimate or decision of such Engineer shall be final and conclusive in any such event."

Article XI, subd. B: 'The Engineer shall inspect the materials furnished and the work done and see that the same strictly corresponds with this contract and the specifications and drawings; and with all assistants and inspectors under his direction, or in the employ of the City, shall at all times have free access to all parts of the work, stores of materials, plants, laboratories and refineries of Contractor, or others employed by Contractor or supplying materials to Contractor; and said Engineer, assistants and inspectors shall be privileged to take such samples of such work or materials, and to cause such tests thereof to be made as they may deem necessary; and Contractor shall render all assistance required in such matters; and if the work or any material brought on the ground for the use in the work, or selected or deposited for selection for such work, shall be condemned either wholly or in part by the Engineer as unsuitable or improper for such work, Contractor shall forthwith remove all such condemned materials from the proximity of the work; and the Engineer shall be authorized for like reasons to condemn any tools, implements or machinery and Contractor shall likewise thereupon remove the same from the proximity of the work; and Contractor shall not permit such condemned materials, tools, implements or machinery to be brought again upon or in proximity to said work, upon penalty of being required to discontinue the work for bad faith as herein provided. All such materials and workmanship shall be at all times subject to the approval of the Engineer, and no inspection, approval or acceptance of any part of the work herein contracted for or any materials used therein, and no estimate or payment on account thereof, shall prevent the City from objecting to the acceptance of any work or materials, or any part thereof, at any time thereafter prior to the date of the certificate of the Engineer evidencing the completion of said work and improvements and the acception thereof by the City, and for and during the period of thirty (30) days after said date; provided, however, that no acceptance on behalf of the City of said work or materials or any part thereof, made at any time or in any manner whatsover, shall ever in any way diminish or affect the rights or powers of the City in connection with the provisions for the guaranty, repairs and maintenance contained in this contract or the 'Maintenance Bond.' "

And in answer thereto the city pleaded these provisions of the contract:

"The City shall not, nor shall any Department or officer thereof, be precluded or estopped by any estimate, return or certificate made or given by the Mayor, Engineer or other officer, employee or agent of the City at any time, from showing the true and correct quality or character of the work done or materials provided or used by contractor under this agreement, or from showing at any time that any such estimate, return or certificate is untrue or incorrect or improperly made in any particular.

"Neither the inspection by said Engineer or any inspector, officer or employee of the City, nor any order, instrument or certificate of said Engineer, nor any estimate or payment by the City on account of said work, nor any extension of time, nor any use of the whole or any part of said improvements, nor any possession of the work or premises taken by the City, or any officer or employee thereof as herein provided, shall operate as a waiver of any provision of this contract, or any right or power herein given or reserved to said City, or of any right to claim any payment, costs, expense, indemnity or damages herein provided for; nor shall any waiver of any breach of this contract be deemed as a waiver of any other or subsequent breach; and every right or remedy under this contract, or included instrument, shall be taken or construed as cumulative, and in addition to all other rights and remedies."

The cause was tried without the intervention of a jury, and the court rendered judgment that the city take nothing by its suit. The city has appealed.

It should be said at the outset that the construction work done by the paving company was done under the direct supervision and instruction of the city engineer and two city inspectors; that after the work was completed the city engineer, at appellee's request, went over the work, expressed his satisfaction therewith, approved and accepted it for the city, as provided in the contract; that the city commissioners thereafter approved and accepted the work by resolution, made the stipulated cash payment to the company, and issued and delivered the assignable certificates as provided in the contract. It is conceded that defects immediately thereafter developed in the paving, that appellee had notice thereof, and set about, at the city's behest, to cure those defects. The defects continued to develop, and appellee continued to remedy them, with the knowledge and at the instance of the representatives of the city. Nine months after the improvement was accepted by the city, its attorney then in office filed this suit, although not formally authorized thereunto by the municipality through its governing board. Notwithstanding the pendency of the suit, however, the city, through its engineer, continued to call upon appellee from time to time to repair the street and keep it in condition, and appellee continued to recognize its obligation by re-

sponding to these demands. And although more than seven years have elapsed, the improvement made and maintained by appellee is still in use as an apparently substantial and serviceable pavement. The city, however, is demanding in this suit that the paving company refund all the money paid it, and surrender all the certificates issued and delivered to it as consideration for its construction and subsequent maintenance of the street improvements.

Appellee contends that the action is one in equity for rescission and cancellation of a contract, to which appellant replies that, "We did not pray for a cancellation of the contract, but to the contrary, affirm the contract, base our cause of action on the contract, and seek to recover money wrongfully received by appellee under the contract. We allege a breach of the contract by appellee and our cause of action is for debt, being to recover money wrongfully paid to and received by appellee under and by virtue of its contractual obligation to do certain things in a certain way—which it never did. Therefore, our cause of action is one in law and not in equity." We conclude, however, that as a practical matter the action is a suit in equity for rescission. It is not a suit merely for damages for breach of contract, for in such case the relief would be the damages actually sustained by plaintiff, which is not the case alleged at all. Certainly it is not a suit to enforce specific performance, for, instead of itself tendering performance, as it must do in such action, appellant is tendering no performance, and is asking a return to it of all the consideration it has paid appellee, and offers nothing in lieu thereof. Obviously, it is not a suit to reform a contract. It is, in effect, a suit in equity to rescind and cancel the contract, in which the plaintiff, alleging partial performance by the defendant and complete performance by itself, seeks to be restored to its original status while retaining all the benefits it has admittedly received from the defendant in the transaction.

The record shows a state of facts which, in our opinion, clearly sustains the judgment appealed from. Under the terms of the contract involved the paving company did the work with materials selected or furnished by the city and approved by its engineers and inspectors, under the latter's immediate and arbitrary supervision and instructions. These agents of the city, selected by the latter for that very purpose, were the sole and final arbiters of the suitability and quantity and quality of the material and of the time and manner of its use in the work, and the record shows they were constantly on the job, and actually supervised and directed the whole work. When the work was completed the paving company called on the city engineer to inspect the work and determine if anything further was required to bring it within the plans, specifications, and contractual requirements, and entitle the paving company to a certificate of approval and acceptance. The engineer made this final inspection, approved the work, and accepted it in accordance with the contract. This approval was confirmed by the city council, who thereupon accepted the work by formal resolution, paid its proportion of the consideration for the improvement, and issued and delivered the assignable certificates for the balance. Shortly afterwards defects developed in the paving, and, in response to a demand from the city engineer, appellee repaired the improvement. Other defects developed from time to time, and in each instance appellee made the repairs required by the city engineer. These defects occurred and were corrected from time to time over a period of two or three years, at a cost to appellee of several thousand dollars. There is evidence to support the trial court's implied findings that the work was done by appellee in substantial compliance with the requirements of the contract, and that the paving has always been and still is in fairly good condition; that the street has been constantly used by the public during the 7½ years since appellee paved it, and is still being so used, much as other paved streets are in use in the city. We have no authority to disturb these implied findings of the trial court, which, being supported by material evidence, are just as binding upon this court as would be similar and specific findings of a jury.

In this state of the record, this court has no alternative other than to affirm the judgment appealed from, because of the implied findings, based upon evidence of a material nature: (1) That the contract has been substantially complied with by appellee; (2) that appellee did the work under the direction and supervision of, and at the time and in the manner selected and approved by, agents of the city thereunto lawfully authorized by the municipality and by express provisions in the contract; (3) that the materials used in the work were either furnished by the city or selected and approved by its said agents; (4) that as sole and final arbiter the city engineer approved the work and accepted it on behalf of the city as having been completed in accordance with the city's demands under the contract, and the city formally approved and accepted the work; (5) that in all these transactions the city engineer and inspectors acted in good faith with their principal; (6) that thereafter all parties treated the contract as having been completed and determined, and upon the city's demands appellee has expended substantial sums of money in maintaining the paving in substantially good condition in accordance with its guaranty under the contract. We think these findings preclude appellant from recovering the amount it paid appellee and canceling the certificates it issued and deliv-

ered to appellee for the balance of the consideration for the work appellee did under the contract, which is the only relief sought by the city in the litigation. We see no occasion for further discussion.

The judgment is affirmed.