ACCEPTED
01-14-01016-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/22/2015 3:28:19 PM
CHRISTOPHER PRINE
CLERK

No. 01-14-01016-CR

In the

**Court of Appeals**

For the

**First District of Texas**

At Houston

——————◆——————

No. 1399329

In the 177th District Court

Of Harris County, Texas

——————◆——————

**GERARDO TAPIA-LOPEZ**

*Appellant*

V.

**THE STATE OF TEXAS**

*Appellee*

——————◆——————

STATE'S APPELLATE BRIEF

——————◆——————

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

7/22/2015 3:28:19 PM

CHRISTOPHER A. PRINE
Clerk

DEVON ANDERSON
District Attorney
Harris County, Texas

KATIE DAVIS
Assistant District Attorney
Harris County, Texas
State Bar Number: 24070242
davis_katie@dao.hctx.net

JUSTIN KEITER
Assistant District Attorney
Harris County, Texas

1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone: (713) 755-5826
Fax Number: (713) 755-5809

ORAL ARGUMENT WAIVED

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 9.4(g) and TEX. R. APP. P. 39.1, the State waives oral argument since the issues appear well-settled in Texas jurisprudence. But the State will present argument if this Court deems it necessary.

## IDENTIFICATION OF THE PARTIES

*Counsel for the State:*

**Devon Anderson**—District Attorney of Harris County

**Katie Davis**—Assistant District Attorney on appeal

**Justin Keiter**—Assistant District Attorney at trial

*Appellant or Criminal Defendant:*

**Gerardo Tapia-Lopez**

*Counsel for Appellant:*

**Alexander Bunin**—Chief Public Defender of Harris County

**Bob Wicoff**—Counsel on Appeal, Assistant Public Defender

**Mario Madrid**—Counsel at trial

*Trial Judge:*

**Honorable Reagan Clark**—Visiting Judge of 177th District Court

i

# TABLE OF CONTENTS

Page

STATEMENT REGARDING ORAL ARGUMENT ......................................................... i

IDENTIFICATION OF THE PARTIES ......................................................................... i

TABLE OF CONTENTS ................................................................................................ ii

INDEX OF AUTHORITIES .......................................................................................... iii

STATEMENT OF THE CASE ........................................................................................ 1

STATEMENT OF FACTS .............................................................................................. 1

SUMMARY OF THE ARGUMENT .............................................................................. 4

REPLY TO APPELLANT'S SOLE POINT OF ERROR ............................................... 5

   I.     Standard of Review and Applicable Law ....................................................... 7

   II.    The trial court did not err in failing to include "other unknown individuals"
          in the jury charge's application of the affirmative defense of duress. ............... 8

   III.   The appellant was not egregiously harmed by the failure to include "other
          unknown individuals" in the charge's application paragraph regarding the
          defense of duress. .............................................................................................. 12

CONCLUSION ............................................................................................................. 16

CERTIFICATE OF SERVICE AND COMPLIANCE ................................................. 17

# INDEX OF AUTHORITIES

## CASES

*Almanza v. State,*
  686 S.W.2d 157 (Tex. Crim. App. 1984) ...................................................... 7, 12

*Anguish v. State,*
  991 S.W.2d 883 (Tex. App.—
  Houston [1st Dist.] 1999, pet. ref'd) ........................................................ 8, 9, 14

*Arrington v. State,*
  451 S.W.3d 834 (Tex. Crim. App. 2015) ........................................................ 12

*Barrera v. State,*
  982 S.W.2d 415 (Tex. Crim. App. 1998) ......................................................... 9

*Blount v. State,*
  542 S.W.2d 164 (Tex. Crim. App. 1976) ................................................ 8, 10, 14

*Cameron v. State,*
  925 S.W.2d 246 (Tex. App.—
  El Paso 1995, no pet.) .................................................................................... 10

*Devine v. State,*
  786 S.W.2d 268 (Tex. Crim. App. 1989) ...................................................... 8, 11

*Druery v. State,*
  225 S.W.3d 491 (Tex. Crim. App. 2007) ......................................................... 7

*Longoria v. State,*
  14-11-01019-CR, 2013 WL 655710 (Tex. App.—
  Houston [14th Dist.] Feb. 21, 2013, pet. ref'd) ........................................... 13, 15

*Matthews v. State,*
  582 S.W.2d 832 (Tex. Crim. App. 1979) ........................................................ 12

*Ngo v. State,*
  175 S.W.3d 738 (Tex. Crim. App. 2005) ......................................................... 12

*Oursbourn v. State,*
  259 S.W.3d 159 (Tex. Crim. App. 2008) .......................................................... 7

*Potier v. State,*
01-11-00861-CR, 2012 WL 5545352 (Tex. App.—
Houston [1st Dist.] Nov. 15, 2012, no pet.) ........................................................ 10, 11, 14

*Rolle v. State,*
367 S.W.3d 746 (Tex. App.—
Houston [14th Dist.] 2012, pet. ref'd) .............................................................. 15

*Sanders v. State,*
632 S.W.2d 346 (Tex. Crim. App. 1982) ............................................................ 11

*Vega v. State,*
394 S.W.3d 514 (Tex. Crim. App. 2013) ............................................................ 9, 16

## STATUTES

TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007) ................................................ 7

TEX. PENAL CODE ANN. § 8.05(a) (West 2011) ........................................................ 7

## RULES

TEX. R. APP. P. 39.1 ...................................................................................... i

TEX. R. APP. P. 9.4(g) .................................................................................... i

TO THE HONORABLE COURT OF APPEALS:

## STATEMENT OF THE CASE

The State charged the appellant with possessing methamphetamine with the intent to deliver in an amount of at least 400 grams, and the jury found the appellant guilty (CR – 7, 218; 4 RR 246). The jury assessed punishment at 23 years confinement in the Institutional Division of the Texas Department of Criminal Justice and a $1.00 fine (CR – 224-26; 5 RR 28-29). The trial court sentenced the appellant in accordance with the jury's verdict (CR – 224-26; 5 RR 28-30). The appellant filed a timely notice of appeal, and the trial court certified that he had the right to appeal (CR – 228-30).

## STATEMENT OF FACTS

On August 16, 2012, the Houston Police Department's (HPD) Street Level Narcotics Unit set up surveillance at the Ashford Apartments after receiving information that someone was trafficking narcotics (3 RR 19). Officer Moises Zamora led the surveillance team (3 RR 77). Zamora observed the appellant at the apartment complex working as a carpet cleaner (3 RR 79). The appellant had access to several apartment units in order to perform his job (3 RR 79-80). Zamora noticed that the appellant would use a key only when he went in and out of Apartment 1303 (3 RR 82-3). At one point during the day, the appellant entered

Apartment 1303 with two other males (3 RR 85). Based on his experience as a narcotics investigator, Zamora believed that the appellant provided these males samples of the drugs (3 RR 86).

Later the appellant retrieved a white bucket from a van in the parking lot (3 RR 95). *See* (St. Ex. #46). The appellant took the bucket, which appeared empty at this time, with him into Apartment 1303 (4 RR 7-8). He was in the apartment for five to ten minutes and then returned to the van with the bucket, which now appeared full (4 RR 8-10). The appellant placed the bucket in the back of the van (4 RR 10). He drove the van and parked it towards the rear of the parking lot (4 RR 10-12). Zamora observed the appellant get out, meet with another unknown male briefly, and then leave the parking lot in a blue Dodge Neon (4 RR 12). The van remained under surveillance, and no one else approached or entered the van (4 RR 19). A K-9 unit reported to the scene and alerted on the van, indicating that narcotics were inside (4 RR 13, 114).

Officer Carl Sanders with HPD worked as a uniformed unit with Zamora on August 16 (4 RR 68-70). Sanders observed the appellant driving, that he failed to signal a right-hand turn, that he stopped past the stop point at a stop sign, and that he changed lanes without signaling (4 RR 73). Sanders activated his emergency lights and pulled the appellant over for the traffic violations (4 RR 73-75). The appellant cooperated and allowed Sanders to search his vehicle (4 RR

2

84). Sanders spoke with the appellant and asked him to return to the apartment complex (4 RR 87).

The appellant voluntarily drove back to the apartment complex (4 RR 87). Sanders asked the appellant for consent to search the van, but the appellant told him that the van was no longer there (4 RR 90). Sanders knew this was a lie and observed the appellant's cheek muscle begin to twitch (4 RR 90). The appellant's story kept changing about his van and its location (4 RR 91-2). The appellant ultimately admitted that the van was in the parking lot and gave officers permission to search it (4 RR 16). Zamora located the white bucket he had observed the appellant carrying earlier; inside were multiple packages of crystal methamphetamine (meth) (4 RR 20-24). In total the appellant possessed over four kilograms of meth (4 RR 23-24).

The officers contacted the apartment management, and the manager explained that no one was supposed to be in Apartment 1303 (3 RR 35). She stated that no one should have access, including the appellant (3 RR 36; 4 RR 30-31). The manager gave the officers consent to search the apartment (3 RR 36). Inside, the officers found no personal belongings or furniture (3 RR 38). In the kitchen cabinet, they found more meth as well as meth oil (3 RR 38, 43; 4 RR 30-31). The meth oil product is something that drug dealers smuggle into the country and then cook into crystallized meth (4 RR 36). Zamora estimated that the officers

recovered over half-a-million dollars' worth of narcotics that would have made 40,000 servings (4 RR 41).

Ahtavea Barker, a criminalist with the Houston Forensic Science Center (HFSC), tested the narcotics found in both the apartment and the bucket and confirmed that it was meth (4 RR 116). She calculated that the total amount of meth weighed 4,295.3 grams (4 RR 125-26). Jisel Bailon, a DNA analyst with HFSC, tested items that were found on top of the drugs in the white bucket (4 RR 136). *See* (St. Ex. #53-54). Bailon determined that the appellant could not be excluded as a contributor to the DNA found on those items (4 RR 136).

## SUMMARY OF THE ARGUMENT

In his sole point of error, the appellant argues that the jury charge restricted the jury's consideration of the appellant's defense of duress by limiting it to one person, Miguel Zuniga. But the appellant failed to show that the threats from "other unknown individuals" were imminent. Furthermore, the appellant failed to show egregious harm.

## REPLY TO APPELLANT'S SOLE POINT OF ERROR

In the appellant's sole point of error, he argues that the trial court erred in its application of the law to the facts on his affirmative defense of duress. (App'nt Brf. 5). Specifically, the appellant argues that the jury charge limited his affirmative defense of duress to fear of imminent loss of life or serious bodily injury only at the hands of Zuniga. (App'nt. Brf. 5).

The application paragraph to the appellant's affirmative defense of duress in the jury charge, read:

> Therefore, if you find from the evidence beyond a reasonable doubt that the defendant, Gerardo Tapia-Lopez, did commit the offense of possession with intent to deliver a controlled substance, namely, methamphetamine, weighing at least 400 grams by aggregate weight, including any adulterants or dilutants, as alleged in the indictment, but you further find by a preponderance of the evidence that Miguel Zuniga had threatened to kill or cause serious bodily injury to the defendant or another if he did not participate in said offense, and that the force or threats of force were such as would render a person of reasonable firmness incapable of resisting the pressure, and that the defendant was in fear of imminent loss of life or serious bodily injury to himself or another at the hands of Miguel Zuniga if he did not participate in the said offense and that so believing, he did participate, then you will acquit the defendant and say by your verdict "Not Guilty."

> If, however, after viewing the facts from the defendant's standpoint at the time, you do not find by a preponderance of the evidence that the defendant's participation in the said offense, if any, was compelled by such threat of imminent death or serious bodily injury to himself or another at the hands of Miguel Zuniga as would render a person of reasonable firmness incapable of resisting the pressure thereof, then you will find against the defendant on his defense of duress (CR – 213-14).

5

The appellant contends that the evidence showed that the appellant was not only in fear of Zuniga but of persons other than Zuniga. (App'nt Brf. 5-10). The appellant testified that he received a call from Zuniga while he was working at the apartments (4 RR 146). The appellant knew Zuniga from his home in Michoacan, Mexico (4 RR 147). He explained that Zuniga was supposed to marry his sister, but she called off the wedding (4 RR 147-49). The appellant claimed that Zuniga was involved with the drug trade, and he considered Zuniga to be a dangerous person (4 RR 149). He testified that drug cartels will kill you, cut off your head, or hurt you if you do not do what they ask, that "[t]hey don't think twice to do this." (4 RR 149, 158). The appellant explained that Zuniga threatened him (4 RR 150). He stated that Zuniga called him and told him that another person would deliver drugs to where he worked (4 RR 150-51). He testified that Zuniga said that if he did not do this, Zuniga would kill him and his family (4 RR 153, 155).

The appellant further testified that he was "really nervous" and felt that "[t]hey could have done it at the same time at the moment." (4 RR 156). Trial counsel then asked the appellant, "So your feeling is if you don't do this, they're going to kill my family. If I don't do this today, they know where my wife lives, my kids live, my parents live, they're going to go over there and kill them?" and the appellant answered "Yes." (4 RR 156).

6

## I. Standard of Review and Applicable Law

A trial judge has the absolute duty to prepare a jury charge that accurately sets out the "law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007); *Oursbourn v. State*, 259 S.W.3d 159, 179-80 (Tex. Crim. App. 2008). When a rule or statute requires an instruction under the particular circumstances, that instruction is the law applicable to the case, and the trial court must instruct the jury on "whatever the statute or rule requires." *Oursbourn*, 259 S.W.3d at 180. The trial court must give the instruction for the law applicable to the case regardless of whether it has been specifically requested. *Id.* at 179-80. If the defendant fails to request such an instruction, as in the present case, the appellate court must review the effect of the omission under the egregious harm standard. *Druery v. State*, 225 S.W.3d 491, 504 (Tex. Crim. App. 2007) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)).

Duress is an affirmative defense that applies when a defendant "engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another." Tex. Penal Code Ann. § 8.05(a) (West 2011). In order to establish duress, a defendant must prove by a preponderance of the evidence that a threat of death or serious bodily injury was imminent and would render a person of reasonable firmness incapable of resisting

the pressure. *Id.*; *Anguish v. State*, 991 S.W.2d 883, 886–87 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

An "imminent threat is a present threat of harm." *Anguish*, 991 S.W.2d at 886 (citing cases in which the Court of Criminal Appeals has construed the term "imminent" in other contexts). This Court has determined that an imminent threat has two components of immediacy. *Id.* "First, the person making the threat must intend and be prepared to carry out the threat immediately" and "[s]econd, carrying out the threat must be predicated upon the threatened person's failure to commit the charged offense immediately." *Id.* (citing *Devine v. State*, 786 S.W.2d 268, 270–71 (Tex. Crim. App. 1989), and *Blount v. State*, 542 S.W.2d 164, 166 (Tex. Crim. App. 1976)).

## II. The trial court did not err in failing to include "other unknown individuals" in the jury charge's application of the affirmative defense of duress.

The appellant argues that he was in fear of imminent death or serious bodily injury to himself or another by not only Zuniga but by "other unknown individuals who were involved with Zuniga or involved in a drug cartel." (App'nt Brf. 8). But the evidence did not raise the defense of duress from "other unknown individuals." In fact, the record does not even support duress by Zuniga. None of the threats that the appellant testified placed him in fear of his or his family's life were imminent. *See* (4 RR 153, 155-56).

Although duress by Zuniga is "the law applicable to the case" because the trial court appears to have charged the jury on the defense sua sponte, it does not automatically entitle the appellant to a charge on duress caused by anyone. *See Barrera v. State*, 982 S.W.2d 415, 416 (Tex. Crim. App. 1998) (holding that a trial court has no duty to sua sponte charge the jury on unrequested defensive issues raised by the evidence, but if the trial court on its own does instruct the jury on an issue then it signals that the defense was "the law applicable to the case."). The facts still must support the application of duress to these "other unknown individuals." In other words, the appellant was required to show an imminent threat from these "other unknown individuals." *Anguish*, 991 S.W.2d at 886.

The appellant relies on *Vega v. State*, 394 S.W.3d 514, 519-20 (Tex. Crim. App. 2013). (App'nt Brf. 9). But *Vega* dealt with the affirmative defense of entrapment, not duress. *Id.* at 520. In *Vega*, the trial court sua sponte provided an instruction on entrapment in the jury charge and instructed the jury to acquit Vega if it found that he was induced by Marshall Whitlock, a law enforcement officer. *Id.* at 518. For the first time on appeal, Vega argued that the application should also have included a second person named "Jerry." *Id.* Vega argued and the court agreed that the record showed "Jerry" was a confidential informant that had informed Whitlock about the appellant and that it was at Jerry's suggestion that the appellant delivered the drugs to Whitlock. *Id.* at 520. Therefore, the court found

9

that "Jerry" should have also been included in the charge's application of entrapment. *Id.*

In the present case, the record does not show that the appellant was in imminent danger by these "other unknown individuals." The appellant never articulated a particular threat that these individuals made. The appellant merely testified that they threatened him without expanding more (4 RR 150, 155). Additionally, the appellant did not testify that one of these "other unknown individuals" was with him or his family members so that such an individual could have carried out any supposed threat immediately. He testified that he merely *felt* that if he did not handle the narcotics then "they" would kill him or his family (4 RR 155-56).

A threat of death at some indefinite time in the future is insufficient to satisfy the requirement of imminence. *Blount*, 542 S.W.2d at 166; *Potier v. State*, 01-11-00861-CR, 2012 WL 5545352, at *5 (Tex. App.—Houston [1st Dist.] Nov. 15, 2012, no pet.) (mem. op., not designated for publication). There is no evidence that these "other unknown individuals" made a specific, objective threat to the appellant or another if the appellant did not participate in moving the narcotics. *See Cameron v. State*, 925 S.W.2d 246, 250 (Tex. App.—El Paso 1995, no pet.) (finding no objective basis for a claim of compulsion when evidence showed only that defendant was afraid of co-conspirator's temper and followed his orders).

10

Even if the appellant articulated what "they" said, between the alleged threat and the time the appellant handled the narcotics, he had the opportunity to contact the police or leave the apartment complex. *See Potier*, 2012 WL 5545352 at *5 (finding that a threat from a co-defendant no longer present with the Potier was not imminent because he had the opportunity to contact the police, let the victims go, or simply leave the apartment between the time of the threat and the time he killed the victims).

Furthermore, not knowing who "they" are or where "they" are does not indicate the "presence of a threat" required to prove imminence. *See Devine*, 786 S.W.2d at 270–71 (defining imminent as ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near, certain, immediate, and threatening to occur immediately). While there may be situations where a defendant does not know the person or persons' names that intend to do him harm, an identifiable person or persons is needed to meet the requirement of imminence. For instance, in cases of self-defense from multiple assailants, courts have allowed the term "others" when the evidence showed the defendant perceived a threat from a defined group of people. *See*, e.g., *Sanders v. State*, 632 S.W.2d 346, 348 (Tex. Crim. App. 1982) (finding that the jury instruction on self-defense should have included multiple assailants because the evidence showed a particular group of people attacking the defendant) (citing *Matthews v. State*, 582

11

S.W.2d 832, 834 (Tex. Crim. App. 1979)). Therefore, the trial court did not err in excluding "other unknown individuals" from the charge's application of duress because the evidence failed to show that there were imminent threats from these individuals.

III.     **The appellant was not egregiously harmed by the failure to include "other unknown individuals" in the charge's application paragraph regarding the defense of duress.**

Even if not including "other unknown individuals" in the charge's application of duress was error, the appellant never requested that specific instruction during the charge discussion (4 RR 219). Therefore, this Court must review any effect of the omission under the egregious harm standard. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (citing *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005)). And errors which result in egregious harm are those which deny an appellant a fair and impartial trial. *Almanza*, 686 S.W.2d at 171. Examining the alleged error in light of the entire jury charge, the state of the evidence, the argument of counsel, and the record of the trial as a whole, the appellant has not shown egregious harm. *See id.*

The evidence strongly supported a guilty verdict. The appellant was observed entering and exiting an apartment that contained meth as well as items to make more meth (3 RR 79-86). Zamora observed that the appellant only locked Apartment 1303, despite entering and exiting other apartments that day, in an

12

apparent effort to keep the contents secure (3 RR 82-3). Zamora testified that no one else entered or exited Apartment 1303 (3 RR 82-86). Additionally, the majority of the drugs were found in the white bucket inside the appellant's van (4 RR 20-24). Zamora testified he observed the appellant take this empty bucket into Apartment 1303 and return it to his van with something inside of the bucket (3 RR 95; 4 RR 7-8). And just as with Apartment 1303, no one else approached or entered the van after the appellant moved it to the rear of the parking lot (4 RR 19).

Additionally, the appellant's DNA could not be excluded from contents inside of the bucket, and the appellant admitted that he put the packages of meth into the bucket (4 RR 154, 205). Furthermore, the appellant failed to tell Zamora about Zuniga and "other unknown individuals" when given the opportunity (4 RR 201-8). Rather, the appellant told Zamora that his friend asked him to receive a package and that someone would pick it up later; the appellant knew it would be drugs and still accepted it (4 RR 202). Finally, the appellant admitted on cross-examination that he was a liar (4 RR 198).

Any error in an unjustified defensive instruction is not harmful. *See Longoria v. State*, 14-11-01019-CR, 2013 WL 655710, at *7 (Tex. App.—Houston [14th Dist.] Feb. 21, 2013, pet. ref'd) (mem. op., not designated for publication) (finding no egregious harm in charge's error in placing the burden of proof in a consent instruction when the appellant was not entitled to the instruction in the first

place). As previously stated, the appellant was not entitled to an instruction on duress because he failed to show that the imminent threats. The evidence only showed that the threats came directly from Zuniga, which were not sufficient to justify a duress instruction.

Zuniga's threats were made over the phone from Mexico (4 RR 146-47). The appellant testified that Zuniga told him if he did not accept the narcotics that he would kill him and his family (4 RR 153-55). But, as previously stated, threats of death at some indefinite time are insufficient to establish duress. *Blount*, 542 S.W.2d at 166; *Potier*, 2012 WL 5545352 at *5. Zuniga's threat was made over the phone; therefore any threat made by Zuniga could not have been immediately carried out. *See Potier*, 2012 WL 5545352 at *5 (finding that a threat over the phone from a co-defendant no longer present with the defendant was not imminent).

No evidence was presented that Zuniga was with the appellant's family or near them when the threat was made. Furthermore, there is no evidence that Zuniga gave the appellant a deadline by which to accept the narcotics and how long to hold them (4 RR 150). *See Anguish*, 991 S.W.2d at 886–87 (concluding that a threat was not imminent to establish duress because "there was no evidence that the persons making the threat gave appellant a time by which he was to commit the robbery, much less that he was to commit the robbery immediately").

14

Moreover, as previously stated, the appellant did not establish an imminent threat from "other unknown individuals." There was no evidence about what the "other unknown individuals" said that forced the appellant into committing the charged offense (4 RR 155-58). Furthermore, the appellant established throughout trial that Zuniga was a leader in the cartel, and therefore any harm caused by others would have come at his direction.

Because the appellant was not entitled to an instruction on duress, any error in excluding "other unknown individuals" in the instruction's application does not establish egregious harm. *Longoria*, 2013 WL 655710 at \*7. Thus, the appellant failed to show that any possible error was egregious harm. *See id.*; *see also Rolle v. State*, 367 S.W.3d 746, 757 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (noting that egregious harm is "such harm that the defendant has not had a fair and impartial trial").

Finally, looking at the record as a whole the appellant failed to show egregious harm. The appellant does not complain about any other sections of the jury charge (CR – 211-18). Moreover, neither the State nor the appellant suggested that there was any distinction between Zuniga and the "other unknown individuals." The appellant argued that he was in fear of his life without referring to a specific person in closing argument (4 RR 223-25, 230). And the State urged the jury to reject the defense, not because others had made threats, but because the

appellant had failed to show any imminent threat (4 RR 236-46). *See Vega*, 394 S.W.3d at 521-22 (finding no harm in the trial court's failure to apply entrapment to a second individual under the *Almanza* factors). Therefore, it is unlikely the jury that rejected duress caused by Zuniga would have acquitted the appellant based on duress caused by "other unknown individuals." The exclusion of "other unknown individuals" did not affect the very basis of the case, and the appellant's sole point of error should be overruled.

## CONCLUSION

It is respectfully submitted that all things are regular and the conviction should be affirmed.

DEVON ANDERSON
District Attorney
Harris County, Texas


/s/ *Katie Davis*

KATIE M. DAVIS
Assistant District Attorney
Harris County, Texas
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Davis_Katie@dao.hctx.net
State Bar Number: 24070242

16

## CERTIFICATE OF SERVICE AND COMPLIANCE

This is to certify that: (a) the word count function of the computer program used to prepare this document reports that there are 3,771 words in it; and (b) a copy of the foregoing instrument will be served by efile.txcourts.gov to:

Bob Wicoff
Assistant Public Defender
Harris County, Texas
1201 Franklin, 13th Floor
Houston, TX 77002
Bob.Wicoff@pdo.hctx.net

/s/ _Katie Davis_

KATIE M. DAVIS
Assistant District Attorney
Harris County, Texas
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Davis_Katie@dao.hctx.net
State Bar Number: 24070242

Date: July 22, 2015