**AFFIRM; and Opinion Filed August 9, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00271-CR

### JAMES ANTHONY KIRVIN, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 59th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 060407**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Myers
Opinion by Justice Lang-Miers

A jury convicted James Anthony Kirvin of aggravated sexual assault and two counts of indecency with a child. The trial court assessed concurrent prison sentences of forty-five years for the aggravated sexual assault and fifteen years on each indecency count. In three issues, appellant challenges the sufficiency of the evidence to support his convictions and asserts the trial court erred by admitting outcry testimony and by violating his right to self-representation. We conclude that appellant's issues are without merit. We affirm the trial court's judgment.

BACKGROUND

This is the second trial of this case. Appellant was originally convicted in January 2013 of the charges at issue here, but this Court reversed the convictions on an evidentiary ground and remanded for a new trial. *See Kirvin v. State*, No. 05-13-00332-CR, 2014 WL 4261237 (Tex.

App.—Dallas Aug. 28, 2014, no pet.) (mem. op., not designated for publication). At his second trial, conducted in February 2015, appellant represented himself.

The evidence showed that M.G. and A.S. are distant cousins. At trial, both girls were ten years old, but at the time of the offenses in July 2009, M.G. had just turned five and A.S. was a few months younger. That month, they went to visit A.S.'s grandmother, Pamela, in Denison. At the time, Pamela was living with appellant, who she later married. After returning to their homes, the girls reported they had been molested by appellant.

M.G. testified she and A.S. wanted ice cream, but Pamela was not at home and they asked appellant. Appellant was in the bathroom, and M.G. said she knocked on the door. Appellant told them to come in, and when they entered, he was "standing there naked." According to M.G., appellant asked the girls if they wanted to "pet his puppy" or "bad spot," which she said was "where he uses the restroom." M.G. used an anatomically correct doll to identify the area for the jury and verified it was the place where a boy "goes pee pee." When the girls said no, M.G. said appellant "pulled us and made us touch it." M.G. said he pulled her first by her left arm, had her other arm behind her back, and made her touch his penis. Then, she said, he grabbed A.S. by the arm and made her do the same.

M.G. also described a second incident that happened at night. She said she, A.S., Pamela, and appellant all shared a big bed. During the night, A.S. woke her up and said "something was touching her." M.G. saw appellant "hovering" over A.S. M.G. said she turned on the light, and appellant turned the light off and left the room.

M.G. went home the next day and told her grandmother that appellant "was naked standing in front of us." She did not tell her grandmother that appellant made them touch his penis because she was "too nervous." She said she told Bobbie Wieck, a forensic interviewer with the Grayson County Child Advocacy Center, about the touching.

A.S. testified about three incidents that occurred when she stayed with her grandmother and appellant. First, she said she and M.G. were watching television when appellant sat her on his lap and started "wiggling his legs." He asked if she liked that, and A.S. said no. A.S. said appellant began moving her "up and down on his lap." A.S. said "[i]t felt hard" on her "bottom," and she told appellant it hurt.

The second incident occurred at night. A.S. said she and M.G. were sleeping in the same bed as appellant and her grandmother. A.S. said appellant pulled down her panties and "started licking" her "pumpkin," and she woke up. A.S. said appellant "put his boy part inside my pumpkin." She explained that her pumpkin is her "front" where she goes "to the restroom." Again, using a doll, she identified the area for the jury. By "boy part," she meant the "front" part where he goes to "pee." A.S. said she told appellant it hurt, and he told her it was "okay" and to go back to sleep. But A.S. said she did not sleep that night because he kept on "messing" with her.

Finally, she described the bathroom incident but specifically denied touching appellant's penis. A.S. said she and M.G. went into the bathroom, where appellant was taking a shower. She said appellant pulled back the shower curtain, and M.G. asked, "What's that?" Appellant asked if she wanted "to touch it." By "it," A.S. said she meant, "His thing. Where he pee[s]." When M.G. said no, appellant grabbed M.G.'s hand and "made her touch it." Appellant then grabbed for A.S., but A.S. said she "jerked" her hand away. She said she ran to the living room, and her grandmother was in the kitchen washing dishes at the time. A.S. said her mother was the first person she told what happened during her visit.

Appellant represented himself at trial and cross-examined A.S. A.S. testified she and M.G. spent two nights at his house. On the first night, she said she and M.G. slept in a second

bedroom, and it was there that appellant "walked into that room and did what you did to me and you left." On the second night, she said they slept with appellant and her grandmother.

Three outcry witnesses testified—M.G.'s grandmother, A.S.'s mother, and the forensic interviewer. M.G.'s grandmother, Charlene, testified M.G. had lived with her since she was three months old. When M.G. returned home from her visit at Pamela's house, M.G. told her that appellant pulled on her and A.S. and asked if they wanted to "play with the puppy." Charlene asked what she meant, and M.G. told her appellant had his penis out. M.G. was crying and upset. Charlene called the police and her sister, Barbara, who is Pamela's mother and A.S.'s great-grandmother.

A.S.'s mother, Tawanna, testified A.S. and M.G. visited Pamela over the Fourth of July weekend. After the visit, she received a call from her grandmother, Barbara, who told her "something happened at your mom's house" and to not "let the kids go back over there." She also told her to talk to A.S. As a result of that call, Tawanna asked A.S. if appellant had ever touched her or made her feel uncomfortable. A.S. initially said no, but Tawanna could tell she was not being truthful. Tawanna then explained that A.S. had not done anything wrong and was not in trouble. At that point, A.S. told her that she and M.G. wanted ice cream and went to ask appellant, who was in the shower. The girls went into the bathroom, and appellant was naked and asked if they wanted to touch his "puppy." She also told Tawanna about the incident where he moved her up and down on his lap and she felt something hard. Finally, she told Tawanna that she awoke to find appellant groping her and "licking her like a cat."

After A.S.'s outcry, Tawanna and her boyfriend drove to appellant's house, where her boyfriend "beat the crap" out of appellant and knocked out his teeth. Tawanna also testified that her mother, Pamela, has a "learning disability" and functions at a sixth-grade level.

–4–

Wieck, the forensic interviewer, interviewed both M.G. and A.S but testified to only a portion of what M.G. reported. M.G. told Wieck that appellant made her touch his "butt," which she identified as a penis on a diagram of an anatomically correct male, while she, A.S., and appellant were in the bathroom.

Dr. Matthew Cox, a child abuse pediatrician and medical director of the REACH program, testified he received a referral on A.S. in August 2009. A.S. had been examined at another hospital shortly after her outcry, and that hospital report showed redness in A.S.'s genital area and "concerns" that the opening to her vagina was abnormal. Cox's examination occurred about three or four weeks after the reported assault. Although he found no redness to A.S.'s genitals, he did note her hymen was thinner than typical for a child her age. Other than that, he said the exam was normal. Cox explained that most exams are normal, even when there is penetration, because genital injuries heal quickly. On questioning by appellant, Cox testified that A.S. told the nurse that appellant "licked her pee-pee" and "touched her pee-pee with his hands."

Robbie Carney, a detective with the Denison Police Department, investigated the case after receiving a referral from Child Protective Services. He observed the girls' interviews at the advocacy center and then interviewed appellant. At first, appellant denied knowing the girls' names, being alone with them, that they were ever in the bathroom with him, or that they had ever seen him in the bathroom. As the interview progressed, however, appellant admitted he knew the girls, they had stayed at the house, he had "bounced" them on his knee, they had slept in the bed with him, and they had seen him in the bathroom while he was seated on the toilet rubbing lotion on his body. Appellant told Carney the girls came in and offered him a towel, and he told them to get out or he would "put them in the dog house," which he believed is where the girls came up with the story about a puppy. Appellant denied there was any sexual abuse. Appellant also testified that while the girls were visiting, his brother came to visit one night.

–5–

Appellant said his brother took the bed the two girls were sleeping in, and appellant moved the girls to the bed with him and Pamela.

DISCUSSION

In his first issue, appellant contends the evidence is insufficient to support his conviction. In reviewing a challenge to the sufficiency of the evidence, we examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

To obtain a conviction for aggravated sexual assault of a child, the State had to prove appellant intentionally or knowingly caused the sexual organ of A.S., a child younger than six, to contact his mouth. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (2)(B) (West Supp. 2015). To obtain convictions for indecency with a child, the State had to prove that appellant, with intent to arouse or gratify his own sexual desires, caused A.S. and M.G., both children under seventeen, to touch his genitals. *See id*. § 21.11(a)(1) (West 2011).

Appellant argues that the testimony of M.G. and A.S. differs significantly from each other and the outcry witnesses. As examples, he points to the following inconsistencies to challenge the indecency convictions: (1) M.G. testified appellant made A.S. touch him, but A.S. testified she did not touch appellant's penis; (2) M.G. said Pamela was at the store when the bathroom incident occurred, but A.S. said she was in the kitchen; and (3) M.G. said appellant was standing naked in the bathroom while A.S. said he was taking a shower and pulled back the curtain. With respect to the aggravated sexual assault conviction, appellant directs us to A.S.'s testimony on direct and cross-examination that appeared to conflict about where the offense

occurred:  in appellant's bedroom or a second bedroom.  He contends these inconsistencies render the jury's verdicts "irrational."  We disagree.

Appellant's complaint is essentially a challenge to the credibility of the child witnesses, but the jury determines the witnesses' credibility, the weight to give their testimony, and which testimony to believe or disbelieve.  Even with the inconsistencies, M.G. did not waver in her testimony that appellant made her and A.S. touch his penis in the bathroom, although A.S.'s memory was different.  Similarly, A.S. was just as certain in her testimony that appellant licked her genitals, even if there was confusion about whether it occurred in appellant's bedroom or a second bedroom.  In making its determination, the jury could have taken into account the girls' ages at the time of the offense and at trial, the number of years that had passed since the abuse, and the embarrassment and fear that normally accompanies a child's recounting of sexual abuse to a jury.  Additionally, the jury could have considered appellant's own inconsistent statements when questioned by Detective Carney.  Considering all of the evidence presented, we conclude a rational jury could have found beyond a reasonable doubt that appellant committed aggravated sexual assault of A.S. and indecency with both A.S. and M.G.  We overrule the first issue.

In his second issue, appellant argues the trial court erred by allowing the three outcry witnesses to testify because the State did not give him proper notice under article 38.072 of the Texas Code of Criminal Procedure.

The State, if intending to offer an outcry statement in evidence, must notify the defendant of that intention on or before the fourteenth day before trial begins, and provide the name of the witness through whom it intends to offer the statement and a written summary of the statement. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b) (West Supp. 2015).

Six days before appellant's retrial began, the State filed notice of its intent to offer in evidence the hearsay statements of both M.G. and A.S. regarding the offenses.  The notice

–7–

contained statements to Charlene, Tawanna, Bobbi Wieck, and a fourth person who did not testify. Before Charlene, Tawanna, and Wieck testified, the trial court conducted an article 38.072 hearing outside the jury's presence. The only objection appellant made to any of the testimony involved Wieck, and then only as to who was the actual outcry witness. The witnesses all then testified before the jury, and appellant made no complaint regarding notice.

On the morning of the last day of trial, after all the evidence had been submitted in the case, appellant filed and presented a motion to dismiss the charges, complaining in part that he had not received fourteen days' notice under article 38.072 of the outcry witnesses. Appellant argued the supplemental notice was not timely and the State could not rely on the notice from the first trial. The State responded that appellant had received actual notice because the same information was contained in both the original and supplemental notices, appellant was present at the first trial, had access to the transcripts, had all of the discovery, and had a previous hearing discussing the issues. The trial court gave the State an opportunity to find law to respond to appellant's argument that a new notice had to be filed. After an extended discussion on another motion filed by appellant, the court took a "short recess" and told the bailiff to have the jury "take 10 minutes." When the trial court returned, the State presented the court with case law, and the trial court denied appellant's motion.

Before a party may complain on appeal, the record must show that the complaint was made to the trial court by a specific and timely request, objection, or motion. TEX. R. APP. P. 33.1(a). Generally speaking, a party's complaint is adequately specific if the party lets the trial judge know what he wants and why he is entitled to it, and a party's complaint is timely if the party makes the complaint as soon as the grounds for it become apparent. *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006).

Here, appellant was aware at the time of the 38.072 hearings, at the latest, that he believed the State had not provided timely statutory notice. Nevertheless, he waited until all the testimony had been given to object. At that point, his objection was too late to preserve error.

But even if we assume appellant's objection was timely and the State's notice was untimely, appellant must show harm. The purpose of the notice requirement is to avoid surprising the defendant with the introduction of outcry, hearsay testimony. *Zarco v. State*, 210 S.W.3d 816, 832 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Gay v. State*, 981 S.W.2d 864, 866 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). Here, appellant cannot reasonably argue actual surprise to the outcry evidence. The record contained the December 2012 notice setting out each outcry witness and her statement, appellant was tried previously and heard the testimony of the outcry witnesses, and the State asserted—and appellant did not refute—that appellant had access to the transcript of that trial. To the extent appellant argues the original notice was "amended" only six days before trial to add the "critical statement" that he "licked A.S. like a cat," the amendment did nothing more than to notify him of the correct outcry witness. Because appellant has not demonstrated he was surprised or prejudiced by the original or supplemental notices, we conclude he has not been harmed. *See Fetterolf v. State*, 782 S.W.2d 927, 930 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd) (concluding defendant not harmed when given only one day notice when defendant had access to prosecutor's file and was aware of statement and content of outcry witness as well as State's subpoena list); *Alvarado v. State*, 817 S.W.2d 738, 740 (Tex. App.—San Antonio 1991, no pet.) (concluding notice from first trial sufficient under circumstances where new counsel had possession of statement of facts, which included outcry testimony later used in second trial). We overrule the second issue.

In his third issue, appellant contends the trial court violated his Sixth Amendment right to self-representation by (1) discussing matters relevant to a motion outside of his presence,

(2) refusing to hear his argument on that motion, and (3) failing to allow him the opportunity to research legal issues through access to the law library. All of these issues relate to appellant's untimely complaint about notice under article 38.072.

With respect to his first complaint, appellant contends a discussion was held off the record and in chambers without his presence regarding the notice issue. As support, appellant directs us to two portions of the record—the first shows only that a recess was taken during the trial and the second is appellate counsel's argument at the motion for new trial. Neither record citation supports his assertion that he was excluded from trial conferences or discussions in the case.

Next, he asserts that after the "off the record" discussions concluded, the trial court went back on the record and refused to hear his arguments on the motion but listened to the State's. The record does not show the trial court refused to listen to appellant—it just did not agree with him and refused to argue with him. Consequently, this complaint is without merit.

Finally, appellant complains he was denied access to the law library to research the issue. First, we note appellant sought access to the law library for a motion that we have determined was not timely presented. Additionally, appellant's request for access was too late, given that it was made *after* his motion was filed and *after* the trial court had ruled. Regardless, even if appellant had presented his complaint in a timely manner, it is without merit.

The fundamental constitutional right of access to the courts requires prison authorities to assist inmates in preparing and filing meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *overruled in part on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996) (disclaiming *Bounds* to extent it suggested State must enable prisoners to discover grievances and litigate effectively). In the trial court, appellant was first represented by an

–10–

attorney as counsel of record, and then when he insisted on representing himself, had the assistance of standby counsel. His entitlement to assistance was satisfied by the assistance of a person trained in the law. Under these circumstances, we conclude appellant had no additional right of access to a law library. *See Bright v. State*, 585 S.W.2d 739, 744 (Tex. Crim. App. 1979) (rejecting appellant's claim regarding library access because "an attorney was appointed to represent appellant, and even after appellant's request to represent himself was granted, this attorney was instructed by the trial court to continue as standby counsel"); *Johnson v. State*, 257 S.W.3d 778, 781 (Tex. App.—Texarkana 2008, pet. ref'd) (concluding State not obligated to provide appellant law library access after appellant elected to proceed pro se and trial court appointed standby counsel). We overrule the third issue.

CONCLUSION

We affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

150271F.U05

–11–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

JAMES ANTHONY KIRVIN, Appellant

No. 05-15-00271-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 59th Judicial District
Court, Grayson County, Texas
Trial Court Cause No. 060407.
Opinion delivered by Justice Lang-Miers.
Justices Francis and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 9th day of August, 2016.